## J. R. GREEN v. THE STATE.

### No. 3173. Decided May 2, 1906.

**1.—Murder in Second Degree—Change of Venue—Bill of Exceptions.**

Upon trial for murder where a motion for change of venue was overruled, and the bill of exceptions in connection with the testimony did not properly reserve the point at issue, the same could not be reviewed; and especially where appellant in his brief did not rely on this matter.

**2.—Same—Continuance—Bill of Exceptions—Judgment.**

Upon an appeal from a conviction of murder, an exception in the judgment overruling the motion for continuance cannot be considered, but must be presented by bill of exceptions.

**3.—Same—Special Venire.**

Where upon appeal from a conviction of murder, the bill showed that the venire was drawn out of a list of regular jurors for the term at the preceding term of the court, there was no error.

**4.—Same—Jury and Jury Law—Peremptory Challenge.**

Upon appeal from a conviction of murder, where the bill of exceptions showed that the juror whom the appellant challenged peremptorily was qualified; and that the juror whom he accepted instead of the challenged juror was not shown to be partial or unfair, there was no error.

**5.—Same—Enforcing of Rule Against Witnesses—Rebuttal—Discretion of Court.**

Upon appeal from a conviction of murder, where it was not shown that the court had abused his discretion in permitting witnesses for the State to testify in rebuttal who had not been placed under the rule, there was no error.

**6.—Same—Impeaching Testimony—Materiality—Bill of Exceptions.**

Upon an appeal from a conviction of murder, where the appellant took his exceptions to the testimony in the statement of facts but did not embrace the same with that completeness that was necessary if he had taken a separate bill, the Court of Criminal Appeals will not go through the entire record of the statement of facts in order to complete his bill. However, the testimony excepted to was material and the State had the right to impeach appellant's witness upon this issue.

**7.—Same—Charge of Court—Practice.**

There was no error in the courts method in charging the law of murder in the second degree in two distinct paragraphs.

**8.—Same—Limiting Testimony—Assuming Facts.**

Upon trial for murder, where the charge of the court, in limiting the testimony to the credibility of certain witnesses, assumed that the statements were made by the defendant's witnesses and only submitted to the jury the question as to whether or not the testimony of State's witnesses was in conflict with that of defendant's witnesses, the same was reversible error.

**9.—Same—Charge of the Court—Murder in Second Degree—Manslaughter.**

Where upon trial for murder the defendant was convicted of murder in the second degree, the court charged in effect that the burden was on defendant to show that he was only guilty of manslaughter before he could be acquitted of murder in the second degree, there was error; and this, although a subsequent instruction charged the jury that if they had a doubt as between manslaughter and murder in the second degree to give defendant the benefit of the doubt and convict him of manslaughter.

Appeal from the District Court of Titus. Tried below before the Hon. P. A. Turner.

Appeal from a conviction of murder in the second degree; penalty, thirty-five years imprisonment in the penitentiary.

The opinion states the case.

*S. F. Caldwell, Pounders & Burford,* for appellant.—On question of·limiting testimony: White v. State, 13 Texas, 133; Bergstrom v. State, 36 id., 336; Pippin v. State, id., 696; Webb v. State, 8 Texas Crim. App., 115.

*J. E. Yantis,* Assistant Attorney-General, for the State. ·

HENDERSON, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at confinement in the penitentiary for a term of thirty-five years; and appeals.

A brief statement of the case shows that appellant (Green) and deceased (Ore) were neighbors, living two or three miles from Mt. Pleasant. The homicide occurred on Sunday at the home of appellant. The appellant's home (where he and his wife lived) was about 100 yards from appellant's father (A. L. Green). On the Sunday morning in question deceased came to appellant's house, and according to the testimony offered by appellant, came on the gallery and sat down. Appellant came out and took a seat. Presently deceased left the gallery and told appellant that he wanted to see him; passed out of the gate which was some five or ten steps from the gallery, and then out beyond some five or ten steps. Appellant followed along. After they had gotten out of the gate, deceased asked appellant if he had said that he was the cause of his wife not coming back to him. Appellant told him that he had heard that. Deceased told him it was. a damn lie. Appellant told him not to curse the person—that his wife told him. Deceased said they were all damn liars, and he would settle the whole thing right there at his gate, pulled his knife out and advanced on appellant, and tried to cut him with it. Appellant·picked up a stick or piece of scantling, and hit deceased a blow on the head, which staggered him, and then hit him two other licks on the body which felled him to the ground. The blow on the head crushed the skull and caused deceased's death. There were no eye-witnesses who testified to the homicide except appellant and his wife. A. L. Green (appellant's father) and John Green (his brother) also testified, and stated they saw deceased go to appellant's house and go onto the gallery; that they were alone on the gallery at ·their house within view, and that they heard the lick but did not see any of the difficulty. They immediately ran over there and saw appellant walking away, and when they got to the body of deceased on the ground, they saw an open barlow knife lying by his side, near his right hand. They describe the barlow knife as a two-bladed white- or cream-handled

knife.  A good deal of testimony was developed as to the knife.  The State's witnesses testified that that was not deceased's knife, and according to the State's evidence his knife which was identified, was found in his pocket after the homicide.  The State's theory was that either appellant or his father or brother John placed the knife there after deceased had been stricken down.  The State's theory further was that deceased on that Sunday morning went over to appellant's on business; that he had rented his place to appellant and appellant had recently sold the lease and farm products to his brother John Green; and he wanted to see him about the rent.  It is also shown that appellant and his wife had separated sometime in June, 1905; and they remained separated about six weeks or two months, appellant retaining their child, and during the separation going to Louisiana. When they came back, he sent for his wife, and after negotiating some two weeks she came back to him.  There was some testimony from appellant's wife, tending to show that deceased told her not to come back to her husband, after her husband had returned from Louisiana. This is a sufficient statement of the case to discuss the assignments.

Appellant filed a motion to change the venue on the ground of prejudice and also because of a formidable combination against appellant.  The court heard the evidence and overruled the motion.  It does not occur to us that the bill of exceptions in connection with the testimony on the point is properly reserved so as to present this matter for review.  However, looking at the testimony it does not occur to us that the court erred in overruling it.  Moreover, appellant in his brief does not rely on this matter.

Appellant presented a motion to continue the case, and the record shows that the court overruled this motion for continuance, and that appellant excepted to the judgment overruling the same.  However, it does not appear that a proper bill of exceptions was taken to the overruling of said motion.  An exception in the judgment overruling the motion for continuance is not sufficient.  Gaston v. State, 11 Texas Crim. App., 143; Taylor v. State, 14 Texas Crim. App., 340; Griffith v. State, 14 Texas Ct. Rep., 9.

Appellant made a motion to quash the special venire on the ground that the same was not drawn according to law.  The bill shows that the venire was drawn out of the list of regular jurors for the term at the preceding term of the court, which was in accordance with the law.  Gotlieb Gabler v. State, decided April 25, 1906.

Appellant also excepted to the action of the court holding that J. D. Smith, one of the special venire, was a qualified juror and compelling appellant to challenge him peremptorily, and thus exhausting one of his peremptory challenges, and the bill shows that he exhausted all of his peremptory challenges, and he says he was compelled to take one R. C. Stuart, who was not acceptable to him.  It is not shown that this last juror was for any reason not an impartial and fair juror.  The mere fact that appellant wanted to challenge him, and

that he was not acceptable, would not be sufficient. However, the bill of exceptions does not show that the juror Smith was disqualified; on account of having formed a fixed opinion in the case. The bill shows that while this juror stated he would consider the fact that the grand jury indicted appellant as evidence that he was guilty, yet after this matter was explained to him, stated that he did not understand the question when he thus answered it; that he would not consider the indictment as any evidence against defendant, and if the indictment was read to the jury and no other evidence offered he would find defendant not guilty; that he did not know defendant and knew nothing about the case, and had no opinion in the case, and could and would give him a fair and impartial trial, if he should be selected on the jury. This showed that the juror was absolutely qualified to sit as a juror in the case.

In the statement of facts we find what purports to be a bill of exceptions to the action of the court allowing the witnesses Keeney, Ellis and Meek to testify. It seems that the rule as to witnesses was invoked by the State, and the above witnesses were not placed under the rule, but were called by the State in rebuttal. It appears that Keeney was county attorney; that Ellis was justice of the peace, and Meeks was constable. From an examination of their testimony, it appears that they were used in rebuttal, and the State may not have foreseen the necessity for their use as witnesses. The placing of witnesses under the rule or excusing certain witnesses from the rule for cause, as being officers, etc., is within the sound discretion of the court. And the right to introduce witnesses who have not been placed under the rule is also within the sound discretion of the court. Unless there has been an abuse of this discretion, that is, unless some resultant injury to appellant is shown from an introduction of witnesses who have not been placed·under the rule, the case will not be reversed on that account. Baldwin v. State, 39 Texas Crim. Rep., 245; Thomas v. State, 33 Texas Crim. Rep., 607; Cook v. State, 30 Texas Crim. App., 607; Dennis v. State, 7 Texas Ct. Rep., 892.

In appellant's brief he insists that the court committed an error in permitting the State over the objection of appellant to impeach appellant's witnesses, Major Green and John Green as to the whereabouts of Willie Green, "because it was impeaching appellant's witness on an immaterial matter. It was wholly immaterial as to where Willie Green was at the time of the difficulty; that he was not a witness in the case; and did not testify and his whereabouts was immaterial." By looking to the statement of facts it will be seen that defendant asked "that all testimony regarding the whereabouts of Willie Green at the time of the killing offered by the State for the purpose of impeachment should be excluded on the ground that Willie Green had not testified in the case; was not a witness, and that it was impeaching a witness on an immaterial point." The court overruled the objection, and defendant excepted. . Looking back of this it will be

seen that the State was permitted to prove by the county attorney Keeney, and perhaps some others that the witness Major Green, stated that Willie Green was sitting on the door step of the gallery at his house, fixing his shoes, when Dennis Ore came up to the house of appellant, some 100 yards distant; and that he also stated that Willie was there on the gallery at the time of the difficulty. By looking still further back to the testimony of Green it will be seen that he testified that Willie Green was sitting on the gallery at the time deceased came back to appellant's house and called his attention to the fact, that before or about the time it began, Willie started over to the house of appellant, where the difficulty occurred. Mrs. Green (appellant's wife) also stated that Willie was there at the time of the difficulty. We do not believe this bill is taken in proper form to present this matter for review. As was held in Stephens v. State (decided at Dallas Term, 1906), "we will not go through the entire record constituting the statement of facts, in order to make out a bill of exceptions." "If a party desires to take his exception in the statement of facts, he must do so with the same completeness as if he took a separate bill." However, if we review the entire record here, it occurs to us that the whereabouts of Willie Green became a material question in the case. Both witnesses A. L. Green and John Green testified to the whereabouts of Willie Green just before the homicide. They stated that he was on the gallery where they were lying; and that he called their attention to the fact that deceased Ore was at appellant's house, and that just before the difficulty he went from where they were, over in that direction. Appellant's wife testified to his presence at the time of the difficulty. So it appears that appellant by his testimony made the whereabouts of Willie Green a material matter. According to them they would not have known that the party who had come to appellant's house was deceased—especially the witness A. L. Green identified deceased as the party by what Willie Green said to him at the time. So it would seem even if the bill presented this matter in proper shape for review, it would have been competent for the State to have impeached appellant's witnesses upon this issue. But, as stated, we hold that the bill taken in the statement of facts does not present this question so as to require a review by this court.

We do not believe there is anything in appellant's criticism of the court's charge on the ground of his charging the law of murder in the second degree in two distinct paragraphs.

Nor is there anything in the contention that the court improperly reiterated in the charge how Keeney's testimony should be considered by them with reference to a certain portion thereof. An inspection of the charge will not bear out the criticism of appellant. Said testimony was properly limited and submitted to the jury, if they believed the testimony of Kenney contradicted or tended to contradict the evidence of A. L. Green and John Green, or either of them, the court

instructed them to consider the evidence of said Keeney in passing on the credibility of either or both of said witnesses, and in weighing their evidence, or the evidence of either of them, that you may find the evidence of said Keeney may contradict or tend to contradict, The court in further explanation of his meaning instructed the jury, "That is, if you find the evidence of said Keeney contradicts or tends to contradict the evidence of both of said witnesses, then you may consider it in passing on the credibility of both of said witnesses and in weighing the evidence of both of said witnesses, but you can consider it for no other purpose." Or if they considered it contradicted or tended to contradict the evidence of either of said witnesses, they could consider it in passing on the credibility of the one you find it contradicts or tends to contradict, and in weighing his evidence, but you can consider it for no other purpose. The charge appears to be a little complicated, but there being two witnesses involved the court distinctly told the jury how they could consider the contradictory testimony as to either or both of said witnesses.

We do not think the charge is subject to the criticism indulged by appellant, to the effect that as between the degrees of felonious homicide, appellant was deprived of the reasonable doubt, or that the burden was in anywise shifted.

Nor was that portion of the charge couched in the following language, calculated to injure appellant, to wit: "If you believe defendant struck deceased with a piece of wood, the same in your opinion being a deadly weapon, or instrument reasonably calculated and likely to produce death by the mode and manner of its use, with the intent to kill him, and if the evidence fails, in your opinion, to establish express malice on the part of the defendant beyond a reasonable doubt, as express malice is defined and explained to you in this charge on the law of murder in the first degree; and if the evidence further fails, in your opinion, to show that the homicide is of the grade of manslaughter, as that offense is defined and explained to you in this charge; and further fails, in your opinion, to show that the homicide was justified on the ground of self-defense, as the law of self-defense is defined and explained to you in this charge, then the law would imply malice and the homicide would be of the grade of murder in the second degree, and you will so find," etc. This was simply telling the jury that they were authorized to convict appellant of murder in the second degree, unless, on the one hand the evidence failed to satisfy them of the guilt of the defendant of murder in the first degree beyond a reasonable doubt; and on the other, it failed to show appellant was guilty of manslaughter as defined by the court, or was justifiable as self-defense was defined in the charge of the court. We do not believe that this charge had the effect to shift the burden of proof from the State to appellant.

The other charges referred to adequately told the jury as to the nature of manslaughter and the propositions on which appellant could

be convicted of that offense, and also defined appellant's right of self-defense. We fail to see how the jury could have been misled by said charge or how said charges properly considered could affect the burden of proof and shift it on the defendant. The charge on manslaughter was not only correct as an abstract proposition, but was strictly applicable to the facts proved; and the jury could not have been misled by the fact that the court instructed them that, in order for appellant to avail himself of the defense of manslaughter, it must appear that the killing took place immediately upon the happening of the insulting conduct, etc. The facts showed, and these were not controverted, that the killing did take place immediately on the happening of the alleged insult.

We believe that the court's charge as to the confession of appellant, and the circumstances under which they might regard the same as evidence against him was couched in proper terms and sufficiently safeguarded his rights in that respect. The sheriff testified distinctly that he warned appellant before he confessed. Appellant says he did not hear him if he did. The court submitted this issue to the jury. The evidence must show that the warning was given and this was the instruction of the court. On the other hand, if it failed to show that the warning was given, and that appellant heard the warning, then they were charged, not to consider the alleged confession of appellant in arriving at their verdict. The court in this connection did not charge the reasonable doubt as to this matter, but we do not believe that the failure to so charge was calculated to injure appellant. Appellant in his brief does not quote all of the charge. The court first put the question as stated in appellant's brief, and then put the converse thereof; that is, the court instructed the jury if the evidence failed to show that Sam Porter, warned defendant, or if they thought defendant did not hear him, then they would not consider as evidence any statement they may find defendant made to Sam Porter or Jim Keith, or to either or both of them.

The charge of the court is also criticised in that portion thereof limiting the testimony of certain witnesses on the ground as alleged, that the same assumes that the witnesses testified to the facts stated. We think that in each of those charges, while in the beginning thereof it might seem the court was assuming the witnesses had testified so and so, yet in each of the charges, he subsequently leaves the question as to the truth of their testimony with the jury, by stating to the jury, if they believed that the evidence of said witness contradicts or tends to contradict the evidence of witnesses to whom it referred, that they could use it only for the purpose for which it was introduced and not as original testimony. We do not believe the jury were misled by the form of these charges. Besides, the matter referred to in said charges was not controverted by any other testimony. It was unquestioned that said witnesses did testify to certain facts relating to statements or declarations of other witnesses to them.

We have examined the record carefully, and in our opinion it contains no reversible error. The facts are sufficient to sustain the verdict of the jury, and the judgment is affirmed.

*Affirmed.*

Brooks, Judge, absent.

### ON REHEARING.

#### December 12, 1906.

HENDERSON, JUDGE.—This case was affirmed at the Austin Term, and now comes before us on motion for rehearing. There are but two questions which we desire to consider, and both relate to the charge of the court. Both of these matters were considered in the original opinion, but appellant's motion for rehearing again calls our attention to these questions and supports his view not only with authorities but in an able discussion.

It is urged that the charge of the court is wrong on murder in the second degree, in which the jury were told to find appellant guilty of murder in the second degree, if the evidence fails to establish express malice on the part of the defendant beyond a reasonable doubt, and if the evidence further fails to establish that the homicide was manslaughter or self-defense. The contention being here that this charge shifted the burden on appellant to establish that it was manslaughter or self-defense, before he could be acquitted of murder in the second degree. Abstractly speaking, as was held in McGrath v. State, 35 Texas Crim. Rep. 413, murder of the second degree, that is upon implied malice, is bounded on the one side by murder of the first degree, and on the other by manslaughter. So that, if the facts do not show on the one hand murder upon express malice and do not show on the other hand circumstances that mitigate, excuse or justify, and it is an unlawful killing upon malice, it is implied malice. The charge in that case was unlike the charge in this case. Here, more than once the court tells the jury that if the evidence fails to show or fails to establish manslaughter, to find appellant guilty of murder in the second degree. Clearly, as it now occurs to us, putting the *burden on appellant to show or establish manslaughter*, before they would be authorized to acquit him of the higher grade of felonious homicide, being second degree, and convict him of manslaughter. This exact question was before this court in Casey v. State, 14 Texas Ct. Rep., 818. There it was held that such a charge was reversible error. In that case as in this case, in subsequent portion of the charge, the court instructed the jury, if they had a reasonable doubt as between manslaughter and murder in the second degree, to give appellant the benefit of the doubt and convict him only of manslaughter. Such a charge instead of clarifying the situation would rather tend to confuse the jury. In the first place they were told in effect that the burden was on appellant to show that he was only guilty of manslaughter before he could be acquitted of murder in the second degree. The

subsequent instruction to the jury, if they had a doubt as between manslaughter and murder in the second degree, to give appellant the benefit of the doubt, would not relieve them of their duty under the former instruction, to find appellant guilty of murder in the second degree, unless, in their opinion the evidence failed to establish manslaughter. On a reconsideration of the question raised under said charge, we are not prepared to say that the same was not injurious to appellant. He was found guilty of murder in the second degree, and his punishment assessed at thirty-five years in the penitentiary, and the court had no right to place the burden on him to establish his guilt of manslaughter before he could be acquitted of murder in the second degree, or to leave the jury in a confused state as to that question.

The other proposition involves the charge of the court in limiting the testimony of certain witnesses. The contention here is that the court, in said charge assumed that appellant's witnesses made certain statements to the State's witnesses and did not leave the jury free to find whether appellant's said witnesses made said statements or not. The charge as to said witnesses is in this wise: "I charge you that the evidence of R. A. Meek, concerning certain statements made to him by A. L. Green, etc., is not original evidence in his case. But if you believe the evidence of said Meek contradicts or tends to contradict the evidence of A. L. Green, who has testified herein before you, then you are charged that in passing on the credibility of said A. L. Green and in weighing his evidence, you may consider the evidence of said R. A. Meek, but you can consider it for no other purpose." And the same character of charge is given in reference to the testimony contradicting John Green and Mrs. Ida Green, by certain State's witnesses. Now, some of this testimony, though of an impeaching character, was liable to be appropriated by the jury as original testimony, and the court should have plainly told the jury, that if they believed that defendant's witnesses, named, had made certain statements to the witnesses, named, different from their testimony delivered on the stand, and they further believed as to such statements the State's witnesses had testified to facts contradicting or tending to contradict them as to such matters, that they could consider the same only for the purpose of weighing the testimony of such witnesses, or in passing on the credit, if any, which they should accord to said witnesses and for no other purpose. A more critical inspection of the charge as given seems to leave the same liable to the criticism indulged by appellant. That is, that the jury were only permitted to pass upon the question as to whether or not the State's witnesses testified to facts that contradicted the testimony of appellant's witnesses; that the court assumed in its charge that the statements were made by appellant's witnesses and only submitted to the jury the question as to whether or not the State's witnesses were in conflict with appellant's witnesses.

For the errors here pointed out, the motion for rehearing is granted, and the judgment is reversed and the cause remanded.

*Rehearing granted; reversed and remanded.*

Brooks, Judge, absent.