TOM SARTIN v. THE STATE.

No. 3560.    Decided June 5, 1907.

**1.—Manslaughter—Charge of Court—Bill of Exceptions.**

Where upon trial for murder the evidence showed that deceased and defendant got into an altercation and that the former beat the latter severely with a whip, drawing blood; that the defendant went to his residence, got a pistol and fired two shots at deceased, one of which proved fatal, and the court charged the law of manslaughter according to the facts in the case, there was no error; besides general exceptions without specifically pointing out error could not be considered.

**2.—Same—Charge of Court—Insanity—Irresistible Impulse—Burden of Proof.**

See opinion for charge on the defense of insanity and irresistible impulse which was held to be correct, and applicable to the facts in the case.

**3.—Same—Charge of Court—Restricting Evidence—Adequate Cause.**

Where upon trial for murder, there was evidence as to the existence of adequate cause, and also that defendant was insane at the time of the alleged offense, the court correctly limited the testimony of insanity to that issue; having also charged on the law of manslaughter.

**4.—Same—Maltreatment by Physician—Charge of Court—Gross Negligence.**

Where upon trial for murder the evidence scarcely suggested the issue of improper treatment or neglect of deceased by the attending physicians, and taken in connection with other portions of the court's charge, there was no error in the court's charge requiring gross neglect or improper treatment of physicians to absolve the defendant from guilt.

Appeal from the District Court of Grayson.    Tried below before the Hon. B. L. Jones.

Appeal from a conviction of manslaughter; penalty, four years imprisonment in the penitentiary.

The opinion states the case.

*Smith & Wall,* for appellant.—On the question of the charge on insanity: Leache v. State, 22 Texas Crim. App., 279; Bennett ·v. State, 75 S. W. Rep., 314; Bibby v. State, 65 S. W. Rep., 193. By the common law rule, the neglect or improper treatment of the injured person must produce the death of the injured person in order to relieve the person who inflicted the injury of the homicide. Article 652 and 653, Penal Code,. change the common law rule and the rule under our code is that if the neglect or improper treatment is such as to allow, suffer or permit the death, the person inflicting the injury is not responsible for the homicide. (Morgan v. State, 16 Texas Crim. App., 593.) The court in this case announced the common law rule, it was excepted to. We submit that this is error.

*F. J. McCord,* Assistant Attorney-General, for the State.

BROOKS, Judge.—Appellant was convicted of manslaughter, and his punishment assessed at confinement in the penitentiary for a term of four years.

The following, we understand to be, in substance, the evidence, which we take from appellant's brief: "In the afternoon on Sunday about the 1st of August, 1906, appellant and others were sitting on the front porch of a store in the village of White Mound in Grayson County, Texas, when the deceased, Henry Mauldin, driving a two horse wagon to which was hitched a horse on the right and a mule on the left side, came up driving in a southwest direction. Appellant and those there associated with him were on the front of a store facing south. Immediately south of this store was a blacksmith shop. Across the road and west of the blacksmith shop was appellant's house, the house being about sixty yards from the store where appellant was and about thirty yards from the blacksmith shop. Mauldin stopped his team east of the blacksmith shop a short distance and about fifty yards southeast of the store at which appellant was, which was known as Lackey's store. When the deceased stopped he called for Lackey and Lackey went out to his wagon, and had some conversation with the deceased. A few minutes after Lackey went to the wagon, appellant went out to the wagon and asked deceased to return either a grubbing hoe or a shovel which he had borrowed from appellant. Deceased said he would either return the implement or buy appellant another one. Deceased said he would like to know something about some corn that had been missing at his place, to which insinuation appellant replied that deceased was a God damned liar about the corn, whereupon deceased wrapped the small end of a blacksnake whip around his hand and started to get out of the wagon. Lackey who was present told him not to get out of the wagon, and appellant told him if he came to him he would kill him, drawing his knife. Deceased jumped from the wagon, and with the butt end of the blacksnake whip, beat appellant over the head very severely, drawing blood. After he had beaten him a number of licks

over the head, deceased's team turned and ran about one hundred yards in a southeast direction from the point of the first encounter. . Appellant went to his residence, got a pistol, went out to where deceased was, and fired two shots. The first shot appears to have struck deceased's horse. When the second shot was fired deceased appeared to be advancing on appellant, and he continued to advance, although probably struck by the second shot, until he reached appellant, took the pistol away from him and beat him into complete insensibility with appellant's pistol. Appellant was taken to his home and remained in an unconscious condition for many weeks, and he has not been at himself except from time to time since the difficulty. Deceased was taken to his house, found to have been injured with one bullet through the stomach, which penetrated the colon and passed through him. He remained at White Mound all that evening, although doctors were summoned immediately; was brought to Sherman to a sanitarium, reaching Sherman about 1 o'clock on Monday. That afternoon he was operated on and a day or two later he died. Appellant remained at his home for some time, was taken to jail, and from jail to a sanitarium, and from the sanitarium back to jail, and has remained in jail since that time. At the time of the difficulty appellant was an old man 62 years old; would weigh about one hundred and thirty-five pounds, and was frail and feeble. The deceased was about 32 years old, and would weigh about one hundred and eighty-five pounds, and was strong and athletic."

Bill of exceptions No. 1 complains of the following charge of the court, which was the 10th paragraph thereof: "If you believe from the evidence beyond a reasonable doubt that the defendant, with a deadly weapon or instrument reasonably calculated and likely to produce death, by the mode and manner of its use, in a sudden transport of passion aroused by adequate cause as the same is herein explained, and not in defense of himself against an unlawful attack, reasonably producing a rational fear or expectation of death or serious bodily injury, did shoot with a pistol and thereby kill Henry Mauldin, as charged in the indictment, you will find the defendant guilty of manslaughter and assess his punishment in the State penitentiary for any term of years not less than two nor more than five." Appellant's objection to this is that it is not a correct statement of the law, and is not warranted by the evidence. We think the above stated facts clearly warranted the charge, and we do not see in what respect it is not a correct statement of the law; besides, a general exception of this kind would not be treated in a bill of exceptions; same must point out specifically the errors complained of.

Bill of exceptions No. 2 complains of the 11th paragraph of the court's charge, which reads as follows: "One of the defenses relied on in this case is that of insanity, and upon this issue you are instructed as follows: The law does not hold a man responsible for an act committed by him when insane, and it is not necessary that

the insanity should be permanent or that the person should have been a raving maniac at the time of the commission of the act in order to absolve the party from the punishment prescribed by law. It is sufficient to absolve such person if it is shown that he was insane at the time of the commission of the act, though it may be shown that such person was at other times sane. On the other hand, the fact that a person may at times have been insane, or may have had an impaired mind is not sufficient to absolve such person from the punishment prescribed by law for the commission of an act, if it was committed by him during a lucid interval. Again, the law does not require, as the condition on which criminal responsibility shall follow the commission of crime, the possession of one's faculties in full vigor or a mind unimpaired by disease or infirmity. The mind may be weakened or impaired and yet the person be criminally responsible for his acts. He can discharge himself from responsibility only by proving that his intellect was so disordered that at the time he committed the act he did not know the nature and quality of the act he was doing and that it was an act which he ought not to do. On the other hand, if at the time of the commission of the act he had sufficient intelligence to know what he was doing and the will power to do or not to do same, in contemplation of law he is responsible for the act he has committed. In other words, to free a person from criminal responsibility for an act committed by him on the ground of insanity, his mind at the time of the commission of the act must be in such an impaired and unsound state as to create an uncontrollable impulse to do the act by over-riding the reason and judgment and obliterating the sense of right and wrong and depriving such person of the powers of choosing between right and wrong as to the particular act done. A man may be laboring under partial insanity but if he still understands the nature and character of his act and its consequences, if he has a knowledge that it is wrong and criminal, and mind sufficient to apply that knowledge to his own case and know that if he does the act he will do wrong and will receive punishment, such partial insanity is not sufficient to exempt him from responsibility for his criminal act. Where, in a criminal case, the defendant relies upon insanity as a defense, the burden of proof is upon him to establish by a preponderance of the evidence that at the very time of the commission of the act he was insane to the degree set forth in the preceding instructions, as every person is presumed to be sane until the contrary is shown. Therefore, if you believe from the evidence beyond a reasonable doubt that the defendant did kill Henry Mauldin by shooting him with a pistol as charged in the indictment; but if you further believe from a preponderance of the evidence that at the very time he committed the act the defendant's mind was in an impaired and unsound state to such a degree that for the time being it overwhelmed the reason, conscience and judgment and that the defendant in killing said Mauldin acted from an uncontrollable and irresistible impulse produced by such im-

paired and unsound condition of his mind that deprived him of a knowledge of the right and wrong as to the killing, you will find him not guilty; and if you acquit him on the ground of insanity you will so state in your verdict, the form of which should be, 'We, the jury, acquit the defendant on the ground of insanity.'" Appellant objects to the foregoing charge on the ground that same places a greater burden on the defendant than it should in that it requires both that he should not know and understand that his act was wrong, and should not have the will power to resist doing it; it charges the presumption of insanity, is contradictory in its terms, in the form given, is not authorized by the facts; in applying the law to the facts it restricts the jury to the consideration of an uncontrollable and irresistible impulse and places the burden of proof upon the defendant. We do not think any of these objections are well taken, but think the charge is in strict accord with the precedents heretofore approved by this court. See Hurst v. State, 40 Texas Crim. Rep., 378, and Cannon v. State, 41 Texas Crim. Rep., 490.

Bill of exceptions No. 3 complains of the following charge: "Evidence has been introduced before you tending to show that immediately following and for some time after the occurrence in which the deceased was shot and killed, the defendant was of unsound mind. You are instructed that you are to consider such evidence in determining whether, at the time of the shooting, defendant was of unsound mind and for no other purpose." Appellant objects to said charge on the ground that same restricts the evidence when the same could be considered by the jury in determining the existence of adequate cause We do not understand how the evidence could be considered in passing upon the existence of adequate cause. If appellant became crazed from blows inflicted, this would throw no light upon whether his mind was incapable of cool reflection at the time. The court permitted him to prove the character and extent of his injuries at the hands of the deceased, and whether he became subsequently crazy or not could not throw any light upon whether he was laboring under great excitement at the time of the homicide or not. We do not think the charge was improper.

In bill of exceptions No. 4, appellant excepts to the following charge: "So, if you believe from the evidence that the defendant, at the time and place as alleged in the indictment, with a pistol did shoot the said Henry Mauldin, as charged, but you further find from the evidence that there has been gross neglect or manifestly improper treatment of said Mauldin by any one or more of the physicians or persons attending him between the inflicting of the wound and his death, which improper treatment or neglect, if any, caused the death of said Mauldin, then you cannot find the defendant guilty of taking the life of the said Mauldin." The objection to the above charge is that same is not a correct statement of the law, and requires that the gross neglect or improper treatment must cause the death before defendant would be

relieved from responsibility for the same; places a greater burden upon defendant, if by reason of improper treatment and gross neglect death was allowed, defendant would not be responsible therefor. We understand the charge to be correct, and we, therefore, do not think appellant's criticisms arc well taken. The evidence in this case scarcely suggests the issue, but conceding it does, this charge, taken in connection with other portions of the charge on this subject, clearly guards and protects appellant's rights. We have carefully reviewed all of appellant's assignments of error, and we do not think any of them authorize a reversal of this case, and finding no error in the record, the judgment is affirmed.

*Affirmed.*