E. W. HUDDLESTON v. THE STATE.

No. 3754.   Decided June 24, 1908.

**1.—Murder—Constitutional Law.**

The Act of the Thirtieth Legislature in regard to the manner of summoning and empanelling grand and petit juries in a county including a city or cities of twenty thousand inhabitants is constitutional.

**2.—Same—Charge of Court—Self-Defense—Force.**

Upon trial for murder where the evidence showed that deceased was in the act of making an assault with a deadly weapon upon defendant, and had made threats and had had a previous difficulty with defendant in which he had inflicted wounds upon defendant by the means of an ax handle from which the latter was still suffering, a charge that defendant could use no more force to defend himself than the circumstances reasonably indicated to be necessary, was error.

**3.—Same—Charge of Court—Manslaughter—Adequate Cause.**

Where upon trial for murder the evidence showed that shortly before the homicide deceased made a violent assault on defendant with an ax handle; and also showed an assault a few days before the killing by deceased upon defendant; and that deceased had made threats against defendant which were communicated to the latter; that defendant was still suffering from the wound inflicted by the ax handle; and that deceased was about to make an assault upon defendant with a gun, it was error for the court in his charge to select one particular basis as adequate cause, and that the same must arise at the time of the killing.

**4.—Same—Charge of Court—Abandonment of Difficulty—Burden of Proof.**

Where upon trial for murder the question of abandonment of difficulty by deceased was not raised by the evidence, the court should not have charged upon same. Furthermore the court's charge required the jury to find affirmatively beyond a reasonable doubt that a short time prior to the killing deceased had assaulted the defendant, thus shifting the burden of proof as well as the reasonable doubt, which was error.

**5.—Same—Charge of Court—Threats—Uncommunicated Threats.**

Where upon trial for murder the evidence not only showed communicated threats but also uncommunicated threats, a charge of the court limiting the effect of uncommunicated threats to an ascertainment of the condition of the mind of the deceased, instead of submitting such uncommunicated threats upon the question as to whether the deceased began the attack that ended in his death, the same was error.

**6.—Same—Charge of Court—Communicated Threats.**

Where upon trial for murder the evidence showed threats by deceased against the defendant which were communicated to the latter, the court should have

charged that defendant had a right to act upon them whether they were true or not.

Appeal from the District Court of McLennan.    Tried below before the Hon. Sam R. Scott.

Appeal from a conviction of murder in the second degree; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Taylor & Gallagher,* for appellant.    On question of charge on reasonable force:   Counsel cited cases in opinion.   On question of adequate cause:   Counsel cited cases in the opinion.   On question of self-defense:   Counsel cited cases in the opinion.

*F. J. McCord,* Assistant Attorney-General, for the State.—On question of adequate cause:   Trotter v. State, 37 Texas Crim. Rep., 468. On question of threats:   Woodwing v. State, 34 Texas Crim. Rep., 419.

DAVIDSON, Presiding Judge.—Appellant was convicted of murder in the second degree, his punishment being assessed at five years confinement in the penitentiary.

The first question suggested for revision is the alleged unconstitutionality of the Act of the Thirtieth Legislature in regard to the manner of summoning and empaneling grand and petit juries in a county including a city or cities of 20,000 inhabitants.    This question was decided adversely to appellant in the case of Bob Smith v. State, decided at the present term.

The facts show that there had been trouble between appellant and deceased Thompson a few days prior to the homicide, and that on the day of and about one and a half hours prior to the killing, deceased had attacked appellant with an axe handle and inflicted painful chastisement.   This was on the west side of the river in Waco.   At the time of the homicide appellant was east of the river some distance from where the former trouble had occurred.   That deceased came over in that part of town in a buggy, and was approaching in the direction of appellant, and as he (deceased) came near him, appellant's contention, under his testimony, was that deceased was in the act of procuring his gun and getting it in position to shoot appellant.   That before getting it into actual shooting position appellant fired, the wound resulting fatally.    Appellant testified that after going to East Waco he met his nephew, Jake Thompson, who told him (appellant) that Bartlett had informed him that deceased and his crowd were armed with a gun on the opposite side of the river, and were coming across, and stated to appellant that he had better go home.   Appellant further testified that he started to the wagon yard to go home, and that when he had walked about three steps on Elm street his attention was called to deceased Thompson, and looking

around he "saw Thompson throw the lines to his wife and start for his gun." That deceased Thompson got hold of his gun and got it with the muzzle up nearly to the top of the dash board, and that he believed from all the preceding circumstances, which are unnecessary here to repeat, that deceased was getting his gun for the purpose of shooting, and that he shot deceased to avoid being himself shot.

Upon this state of case the court charged the jury as follows: "Every person is permitted by law to defend himself against any unlawful attack reasonably threatening injury to his person, and is justified in using all the necessary and reasonable force to defend himself, but no more than the circumstances reasonably indicate to be necessary." Error is assigned in that the charge was an illegal limitation on the right of self-defense, and had a tendency to impress the jury with the belief that the court thought appellant had used more force than was necessary, and that he should have resorted to other means of defense before shooting. If deceased was in the act of making an assault with a deadly weapon following the numerous threats, testified to, by the defendant, the law would presume that it was the intention of deceased to kill appellant and the court so charged the jury in another portion of the charge. This being the case, appellant had the right to use the most effective means at hand to prevent death or what he believed might end in death at the hands of the deceased by the use of the gun. We are of opinion this was a limitation on the right of self-defense not warranted by the facts. See Scott v. State, 46 Texas Crim. Rep., 536; 81 S. W. Rep., 951; Crenshaw v. State, 48 Texas Crim. Rep., 77; 85 S. W. Rep., 1147; Kelly v. State, 43 Texas Crim. Rep., 40; 62 S. W. Rep., 915. In the Scott's case, supra, the opinion uses this language: "Both parties used guns, which were evidently deadly weapons, from the very beginning, and the question of excessive force is not in the case. We are not prepared to say, this issue not being in the case, that a charge thereon might not have injuriously affected appellant. The jury may have considered that in the opinion of the court there was testimony somewhere from some of the witnesses, showing that appellant used more force than was really necessary, although he might have been authorized to use some force for his protection. If indeed he was authorized to use any force, in our opinion he was authorized to use all the force which the evidence shows he did use." The cases of Crenshaw and Kelly are to the same effect, and not only so, but hold that where the assault or attempted assault is with a deadly weapon, the assaulted party is entitled not only to shoot but to continue to shoot until all danger is past.

This portion of the court's charge on manslaughter is criticised: "The following is deemed adequate cause in law: An assault and battery by deceased causing pain and bloodshed." This is given in the case with the statutory definition of manslaughter in regard to adequate cause and sudden passion and provocation, etc. It is con-

tended this charge is erroneous, because it requires the assault and battery shall produce both pain and bloodshed. The statute limits assault and battery by deceased to one causing pain or bloodshed. And it is further contended that the charge is erroneous in selecting out this single example of adequate cause and giving it to the jury to the exclusion of other facts and circumstances in evidence which singly or collectively may have been sufficient to constitute adequate cause. As before stated, about an hour and a half prior to the killing deceased, Thompson made rather a vigorous assault on appellant with an axe handle. The deceased had also assaulted appellant with his fist on Saturday preceding the killing, which occurred on Monday. On Sunday preceding the killing appellant had been informed of threats made by deceased against him. He had, a few moments before the homicide, been informed that the deceased and his crowd, as the witness called them, had a gun with them on the other side of the river, and were coming across, and advised appellant that he had better go home. Appellant was still suffering from the wound inflicted by the axe handle; that he (appellant) started to go home, and when his attention was called to the deceased he looked around and saw deceased throw the lines to his wife and start for his gun; that deceased got hold of his gun and got it with the muzzle nearly up to. the top of the dashboard. That the wife of deceased was with him in the buggy, and threw herself in front of deceased, and when she got out of the way appellant raised his gun suddenly and fired. Deceased held on to his gun until appellant fired the second shot, which immediately followed the first. Appellant's contention is that he was excited when he saw deceased, and that all the circumstances preceding his last meeting impressed him that when deceased reached for his gun he was going to shoot, and that he shot to prevent deceased from shooting him. This character of charge has been held vicious by the decisions since Foster v. State, 8 Texas Crim. App., 248; see also Tickle v. State, 6 Texas Crim. App., 623; Hill v. State, 8 Texas Crim. App., 142; Childress v. State, 33 Texas Crim. Rep., 509; Williams v. State, 15 Texas Crim. App., 617; High v. State, 26 Texas Crim. App., 545; Spivey v. State, 30 Texas Crim. App., 343; Bagley v. State, 103 S. W. Rep., 875; Hardy v. State, 36 Texas Crim. Rep., 400; 37 S. W. Rep., 737; Cochran v. State, 28 Texas Crim. App., 422; Bracken v. State, 29 Texas Crim. App., 362; Keith v. State, 50 Texas Crim. Rep., 63; 94 S. W. Rep., 1044; Lundy v. State, 48 Texas Crim. Rep., 217; 87 S. W. Rep., 352. In order to make adequate cause from the assault with the axe handle, it having occurred one and a half hours before the homicide, either other circumstance should have occurred so as to bring prominently in the mind of appellant said assault, or the charge upon cooling time should have been given. The court selected one particular fact as a basis for manslaughter, and yet charged the jury that the provocation must arise at the time of the killing. This occurred an hour and a half before

the homicide. To say the least of it, this charge was very confusing. An assault causing pain or bloodshed an hour and a half before the killing could not have arisen at the time of the killing, and the court charged the jury that the provocation must arise at the time of the killing, and failed to charge the law of cooling time. There were circumstances, viewed in the light of past transactions, at the time of the shooting, calculated to arouse sudden passion, such as anger, rage, sudden resentment, or terror rendering the mind for the time incapable of cool reflection, at least the facts were there, and testified by the witnesses. However, the court charged in a general way that although the law provides that provocation causing sudden passion must arise at the time of the killing, and it is the duty in determining the adequacy of the provocation, to consider in connection therewith all the facts and circumstances in evidence in the case, and if by reason thereof, the defendant's mind at the time of the homicide was incapable of cool reflection, and that said facts and circumstances were sufficient to produce such state of mind, in a person of ordinary temper, then the proof as to the sufficiency of the provocation satisfies the requirements of the law, and so they would consider the facts and circumstances in evidence in determining the condition of appellant's mind at the time of the killing, and the adequacy of the cause producing such condition. In view of the previous charge given, and the further fact that the court instructed the jury that the provocation must arise at the time of the commission of the offense, and that the passion is not the result of former provocation, this latter charge was rather confusing than otherwise. Upon another trial a charge should be so framed as not to confine the attack by deceased upon appellant with an axe handle an hour and a half before the killing as a provocation occurring at the time, and cutting off their consideration of one of the producing causes, which was one of former provocation.

The court gave the following charge: "If you believe from the evidence in this case beyond a reasonable doubt, that a short time prior to the alleged killing of the deceased by the defendant, the deceased had assaulted the defendant and you further find the deceased abandoned said assault and had quitted the combat, as far as he could, and you find that the defendant then under the immediate influence of sudden passion, which passion was produced by the assault of the deceased upon the defendant a short time prior to the shooting, the defendant fired upon and killed the deceased, and you find beyond a reasonable doubt that the defendant was not acting in self-defense as herein charged, then and in that event, the defendant would be guilty only of manslaughter and if you so find you will so say." We believe this charge is subject to the criticism that it required the jury to find affirmatively beyond a reasonable doubt that a short time prior to the killing deceased had assaulted the defendant, shifting the burden of proof as well as the reasonable doubt. Appellant did not

have to prove beyond a reasonable doubt that the deceased had attacked him with an axe handle. The reasonable doubt is resolved in appellant's favor; and they were further required by this charge in order to mitigate the homicide to manslaughter to affirmatively find beyond a reasonable doubt that appellant killed deceased under the immediate influence of sudden passion produced by previous assaults. This charge, it occurs to us, placed the burden of proof on appellant and turned the reasonable doubt against him. The accused is entitled to the reasonable doubt of the existence of criminality in regard to facts when his life or his liberty is sought at the hands of a jury. We believe also that it was error to charge with reference to abandonment of the difficulty by the deceased. It would make no difference under the facts of this case, in regard to abandonment of the difficulty, as to whether deceased had abandoned the difficulty or not. There had been a difficulty, and it seems to have been brought on and carried to its final result by the deceased. Painful wounds had been inflicted by deceased and there was testimony tending to show that deceased had not abandoned it or quit his purpose of inflicting serious bodily injury on appellant. He had armed himself with a gun and went in the direction appellant had gone, and the testimony raises the issue that he was following appellant at the time they met. What the previous difficulty had to do with the case on the question of abandonment we do not exactly comprehend. The question of adequate cause and passion turned upon the facts, part of which hinged upon the previous difficulty, and the infliction of the punishment by deceased upon appellant. Whether he abandoned the difficulty or not, the adequate cause would be the same. This was a limitation on manslaughter theory, and in our judgment not warranted by the law. On these different propositions see Melton v. State, 47 Texas Crim. Rep., 451; 83 S. W. Rep., 822; Green v. State, 49 Texas Crim. Rep., 645; 98 S. W. Rep., 1059; Casey v. State, 49 Texas Crim. Rep., 174; 90 S. W. Rep., 1018; Halsford v. State, 53 Texas Crim. Rep., decided Dallas Term, 1908; Bracken v. State, 29 Texas Crim. App., 362; Bonner v. State, 29 Texas Crim. App., 223; Hawthorne v. State, 28 Texas Crim. App., 212; Bagley v. State, 103 S. W. Rep., 875; Spivey v. State, 30 Texas Crim. Rep., 343; 77 S. W. Rep., 444.

In regard to threats, the court charged as follows: "Threats made by a deceased person against the life of a person accused of the murder of such deceased person while not communicated to defendant may be considered by the jury in ascertaining the condition of the mind of the deceased at the time of the homicide." This is a charge upon uncommunicated threats. In this connection the witness May testified that deceased came to him just before the killing and tried to get a gun. The witness Barron testified that after the axe handle assault deceased said he was going to Ambolds and get a gun, and would run those negroes off the face of the earth; that he was getting too old to fight with his fists. Bartlett testified that shortly before the killing

he saw a gun in deceased's buggy. Deceased said that they had had a scrap that day, and that he heard that they were ganging up for him on the other side of the river, and that if they showed fight he was going to drop them. That when he advised deceased to wait until the cool of the evening and his passion had subsided and avoid trouble deceased said he was going over there. Holt testified that deceased shortly before the killing tried to rent a gun from him, and that the witness refused to rent him the gun at first because deceased wanted the gun to shoot squirrels and wanted buck-shot to shoot them. That deceased afterwards got the gun and later actually got the buck-shot shells. Costly testified that after the assault before the killing, deceased in a conversation with him was very angry; that he referred to the axe handle trouble, and also a fight before that with appellant, and deceased said he was going to get a shotgun and fix Huddleston, appellant. The constable, Lee Jenkins, testified that a short while before the killing the deceased Thompson came by his office in the courthouse and said as he passed by: "Mr. Lee, I'm going out and you may have to come and get me." There are other witnesses, to wit: Ganor, Riddle and Thompson, who testified to facts showing that deceased Thompson had not seen appellant until at the time of the homicide when the deceased had his gun drawn in a shooting position. This latter testimony was from the State's witnesses mentioned, the theory of the State being that appellant, therefore, began the difficulty at the time of the killing. Other witnesses testified for appellant, as did appellant himself, substantially, that deceased on sight of appellant threw his lines to his wife, grabbed his gun and attempted to get it into a shooting position, and succeeded in getting the muzzle as high as the dashboard, at which time appellant shot him. The charge quoted is the only one given in regard to uncommunicated threats. We think this was error. Trotter v. State, 37 Texas Crim. Rep., 468; 36 S. W. Rep., 278; Pitts v. State, 29 Texas Crim. App., 374; Levy v. State, 28 Texas Crim. App., 203. In Pitt's case it was held that uncommunicated threats are mainly admissible in evidence in cases of doubt as to who commenced the difficulty. In the Levy case it was held that uncommunicated threats were admissible and proper evidence for the purpose of showing that in all probability the deceased made the attack, and his purpose in so doing. In the Trotter case the court charged the jury that uncommunicated threats were to be considered as a circumstance tending to explain the acts of the deceased at the time of the killing, and as further circumstances tending to show whether or not deceased began the difficulty at the time of the killing; and it was further held that the omission of this part of the charge would have been error. It will be observed that the court in the charge given limited the effect of uncommunicated threats to an ascertainment of the condition of the mind of the deceased at the time of the homicide. Appellant was on trial, not the deceased. The question of self-defense was in the case, and uncommunicated threats were of decided importance in solving the question as to who began this difficulty. While uncommunicated threats

would not justify because the appellant was not aware of such threats, yet it is a potent circumstance to be considered by the jury as to whether or not deceased began the attack that ended in the homicide. It was a very serious issue in the case as to who began the difficulty resulting in the homicide. This charge should not have been thus limited.

Upon another trial the court should also inform the jury as to the law in regard to communicated threats to the effect that if they were communicated although not true, if appellant believed them true, and that deceased made them, he would be equally justifiable as if deceased had in fact made the threats. This issue is raised by the testimony, and the jury should have been properly instructed in regard to it, for in passing upon the issues of the case, where there is a contradiction of the testimony, some of which will show that threats were not in fact made, yet if appellant was so informed and believed the threats had been made, he was entitled to act the same as if they had been in fact made. The court failed to instruct the jury in regard to this phase of the law.

There are some other assigned errors in the case which we think are hardly of sufficient importance to require discussion.

For those indicated, however, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*