## Van Carson v. The State.

### No. 242.   Decided December 8, 1909.

**1.—Murder—Charge of Court—Self-Defense.**

Where, upon trial for murder, the evidence raised the issue of self-defense, it was reversible error in the court's charge to instruct the jury that the right of self-defense continued as long as it reasonably appeared to the defendant that the danger existed, and which tended to impress the jury with the belief, in the opinion of the court, that defendant had used more force than was necessary, and after the reasonable appearances of danger had passed. Following Huddleston v. State, 54 Texas Crim. Rep., 93.

**2.—Same—Evidence—Expert Testimony—Opinion of Witness.**

Upon trial for murder the court erred in excluding testimony that defendant's witness had examined the body of the deceased at the inquest, and after deceased had been stripped witness placed his right hand back on deceased's right hip, and that the wounds in the right forearm of the deceased, made by the entrance and exit of the bullet, were in a line with the wound on the right side of the back of the deceased; this was not expert knowledge or mere opinion of the witness, but a statement of the facts vital to the defense.

**3.—Same—Charge of Court—Murder in Second Degree.**

Upon trial for murder, where the court charged that implied malice is that which the law infers from or imputes to certain acts, however suddenly done; thus, when the fact of an unlawful killing is established, and the facts do not establish express malice beyond a reasonable doubt, nor tend to mitigate, excuse or justify the act, then the law implies malice, and the murder is in the second degree; this was a proper charge, and there was no error.

**4.—Same—Evidence—Ill-Will.**

Upon trial for murder there was no error in admitting testimony showing the ill-will and animosity of the defendant towards the deceased.

**5.—Same—Charge of Court—More than One Assailant—Self-Defense.**

Where, upon trial for murder, the evidence raised the issue of more than one assailant, the court's charge on self-defense that, when there is more than one assailant, the slayer has the right to act upon the hostile demonstration of either one or all of them, and to kill either one of them, if it reasonably appears to him that they are present for the purpose, and acting together, to take his life, or to do him serious bodily injury, was sufficient, without especially applying this to the conduct of a certain party acting with the deceased.

Appeal from the District Court of Bowie.   Tried below before the Hon. P. A. Turner.

Appeal from a conviction of murder in the second degree; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Hart, Mahaffey & Thomas,* for appellant.—On question of court's refusal to admit testimony as to the relative direction of the wounds: Balls v. State, 40 S. W. Rep., 801.   On question of court's charge on self-defense:   Huddleston v. State, 54 Texas Crim. Rep., 93, 112 S. W. Rep., 64.   On court's charge on murder in the second degree: Swain v. State, 48 Texas Crim. Rep., 98, 86 S. W. Rep., 335; Dobbs v. State, 51 Texas Crim. Rep., 113, 100 S. W. Rep., 946.   On question of court's charge on self-defense and more than one assailant:

Wheeler v. State, 54 Texas Crim. Rep., 47, 121 S. W. Rep., 166; Harris v. State, 51 Texas Crim. Rep., 564, 103 S. W. Rep., 390; Bond v. State, 23 Texas Crim. App., 180; Cartwright v. State, 16 Texas Crim. App., 473. On question of admitting testimony, as to ill-will of defendant towards deceased: Rye v. State, 8 Texas Crim. App., 153; Pharr v. State, 9 Texas Crim. App., 129; Fore v. State, 5 Texas Crim. App., 251.

*F. J. McCord,* Assistant Attorney-General, for the State.

RAMSEY, JUDGE.—Appellant was convicted in the District Court of Bowie County on the 16th day of June, of this year, of the offense of murder in the second degree and his punishment assessed at confinement in the penitentiary for a period of five years.

It was admitted that on or about the 3d day of August, 1907, appellant shot and killed one Spencer Lewis. On the trial he interposed a plea of self-defense. The evidence showed that he and Lewis were both negroes, appellant being about sixty years of age and Lewis about fifty years of age, and that they lived in the same neghborhood near the town of Dekalb in Bowie County. The evidence further showed a bitter state of feeling existed between the parties and had for some time, in part growing out of the prosecution of deceased on a charge of mistreatment of a horse belonging to a member of appellant's family. The State showed a most bitter hatred on the part of appellant towards deceased, and the uttering of many and serious threats. The evidence also showed that on more than one occasion deceased had made threats against appellant which had been communicated to him. At the time of the killing there was present a son of deceased, whom the evidence shows to have been practically an imbecile, and one Clemmon Wyatt, who appeared and testified as a witness in behalf of the State. The evidence shows that these parties met, deceased and Wyatt going to the town of Dekalb and appellant and his son returning from the said town. Wyatt testifies that when the parties neared each other, appellant jumped off of his horse and deceased also jumped off of his horse and called to appellant who had his gun in shooting position, "don't do that" and ran, and that as he was running away appellant shot and killed him. All the evidence shows there was only one shot fired. Appellant testified that when they met deceased reined his horse rather across the road so as to turn his right side towards him, appellant, threw his hand back on his right hip as though in the act of drawing a pistol from his hip pocket and that thereupon he leaped from his horse to the ground and shooting over or across his horse's neck, shot deceased while in the act of drawing his weapon. Wyatt testified that deceased was unarmed. Appellant testified that he was armed and that he picked up a pistol lying near his body, and produced same on the trial.

The force of this testimony of appellant was broken somewhat by the fact that he made no reference or mention of his having found the pistol, except to his son until quite a while after the homicide. This, perhaps, is a sufficient statement of the case to make the opinion understood.

1. On the trial, the court instructed the jury, among other things, as follows: "The right of self-defense continues as long as it reasonably appears to the defendant that danger, real or apparent, exists, viewed from his standpoint at the time." And also gave the following charge on self-defense: "Every person is permitted by law to defend himself against any unlawful attack, reasonably threatening injury to his person, and is justified in using all the necessary and reasonable force to defend himself, but no more than the circumstances reasonably indicate to be necessary." These instructions are complained of and it is urged that they are erroneous and were calculated to lead the jury to believe that in the opinion of the court, the defendant had resorted to and used more force than was necessary to defend himself at the hands of the deceased; and that there was no evidence in the record justifying the court in instructing the jury that the right of self-defense continues so long as it reasonably appears to the defendant that the danger exists and that read in connection with the other paragraph of the court's charge on this subject, it tended to impress the jury with the belief that in the opinion of the court appellant had used more force than was necessary and had slain the deceased when all reasonable appearances of danger had passed. These contentions are in terms supported by the decision in the recent case, Huddleston v. State, 54 Texas Crim. Rep., 93, 112 S. W. Rep., 64. In that case the court gave almost the identical charge here complained of. It was there said: "If deceased was in the act of making an assault with a deadly weapon, following the numerous threats testified to, the law would presume that it was the intention of deceased to kill appellant, and the court so charged the jury in another portion of the charge. This being the case, appellant had the right to use the most effective means at hand to prevent death, or what he believed might end in death, at the hands of the deceased by the use of the gun. We are of opinion this was a limitation on the right of self-defense not warranted by the facts. See Scott v. State, 46 Texas Crim. Rep., 305; Crenshaw v. State, 48 Texas Crim. Rep., 77, 85 S. W. Rep., 1147; Kelley v. State, 43 Texas Crim. Rep., 40." In this case it should be stated further, that appellant fired only one shot and at a time, if his testimony is to be credited, when deceased was in the act of making an assault upon him with a deadly weapon.

2. Again appellant complains at the action of the court in excluding certain testimony proposed to be given by the witness T. B. Butler. This witness was constable of the Dekalb precinct at the time

of the homicide. He stated that he was present at the inquest; that the clothing was stripped from the body of the deceased and that the witness placed the right hand of deceased upon his right hip, and thereupon the following question was propounded to him: "State whether or not the wounds in his forearm made by the entrance and exit of the bullet were in line with the wound in the right side of the back of the deceased when his hand was so placed upon his right hip?" This question and the answer sought to be elicited thereby were objected to because it related to the opinion of the witness. It is recited that if permitted to have answered, the witness would have stated, "That the wound in the body was, when the right hand was so placed upon the right hip, in a direct line with the wounds in the right forearm." Thereupon the following additional question was propounded to the witness: "When you had placed his right hand upon the right hip, state how a straight line, entering the wound in the arm where the bullet entered and passing through the wound in the arm, would strike the body of the deceased, with reference to the wound in his body?" This question was objected to for the same reason and was by the court sustained. Had the witness been permitted to answer he would have testified: "That when the right hand of the deceased was placed upon his right hip, a straight line entering the wound in the arm where the bullet entered and passing through the wound in the arm, would have struck and entered the wound in the body." This bill is approved with this qualification by the court: "This witness could not tell where the ball entered the arm nor where it went out of the arm. He wanted to testify to a conclusion without knowing the facts upon which it was based." There is, it will be observed, some contradiction between the facts stated in the bill and the qualification of the court. The bill recites and states as a fact that the witness would have testified that if the arm of deceased had been placed in the position substantially as appellant testifies it was when he shot, that the wounds in the arm and in the body would have been in line. Whether the witness was able to testify to the precise location of the wound in the arm, or the wound in the body, yet, if he knew by actual experience and test, by a demonstration of the arm placed on the hip, that they were in line, this testimony was admissible, although he may not have been able to have stated accurately the precise location of the two wounds. This testimony was rendered the more important to appellant because the clothing which deceased wore at the time had been lost while in the possession of the State and could not be produced. It was. more than a mere opinion of the witness. It was the statement of a fact vital to appellant's defense. As stated by the court in Balls v. State, 40 S. W. Rep., 801: "Any witness of ordinary sense could state, without being an expert, that the bullet holes in the back of the deceased were lower than the bullet holes in the breast." Nor was it a matter of expert knowledge or mere opin-

ion of the witness that the wound in the body and on the arm when it was placed on the hip, were in line. We think the court erred in rejecting this evidence.

3. The court's charge on murder in the second degree is complained of. Among other things, the court gave the following instruction: "Implied malice is that which the law infers from or imputes to certain acts, however suddenly done; thus, when the fact of an unlawful killing is established, and the facts do not establish express malice beyond a reasonable doubt, nor tend to mitigate, excuse or justify the act, then the law implies malice, and the murder is in the second degree." It is objected that this charge is erroneous because upon the weight of the evidence and was an express direction on the part of the court to the jury to find the defendant guilty of murder in case they found certain facts to be established by the evidence, instead of telling the jury they might convict the defendant of murder in case certain facts were found by them to exist. We do not believe the charge is upon the weight of the evidence. It was a general definition by the court in which the jury were instructed with reference to the distinguishing features between murder in the first degree, murder in the second degree and manslaughter. We understand the rule to be well settled that where an unlawful killing is shown of which a defendant is guilty, and the evidence does not show express malice, or a state of facts which would justify or excuse the homicide or reduce it to manslaughter, then such killing, being unlawful, it is murder in the second degree. This is the substance of the court's charge and is not, we think, subject to the criticism and assault made upon same.

4. On the trial the State offered a number of statements of appellant made after the homicide showing intense dislike and ill-will towards deceased. In view of the condition of the case, we think this testimony admissible to show ill-will, animosity and that it illustrates the appellant's attitude in respect to the killing and that the same is not subject to the objection made.

5. Complaint is also made that the charge is erroneous in that it does not instruct the jury with reference to appellant's right to act on the hostile demonstrations of Clemmon Wyatt. We can not agree to this contention. On this subject, after giving what is in most respects an excellent charge on self-defense, the court thus instructs the jury: "When there is more than one assailant, the slayer has the right to act upon the hostile demonstration of either one or all of them and to kill either one of them, if it reasonably appears to him that they are present for the purpose and acting together to take his life or to do him serious bodily injury." It is claimed that there is no application of this rule of law to the conduct of Clemmon Wyatt in the court's charge. Under this instruction, the jury must have understood that the same rule would apply and the same grounds of self-defense would inure to him in respect to any act or declaration

of Clemmon Wyatt as would in respect to a similar act or demonstration on the part of deceased.

For the errors pointed out the judgment is reversed and the cause is remanded.

*Reversed and remanded.*