N. E. SMITH v. THE STATE.

No. 2402.    Decided April 16, 1913.

**1.—Murder—Evidence—Declarations of Third Party—Res. Gestae.**

Where the declarations were not wholly disconnected with the transaction and were not made by an outsider, but by one of the actors at least in the event leading up to the homicide, and at the time the shots were fired which killed the deceased, they were admissible as res gestae; however, as they were withdrawn by the court, there was no reversible error. Following Roberts v. State, 48 Texas Crim. Rep., 210, and other cases.

**2.—Same—Evidence—Declarations by the Defendant.**

Upon trial of murder, there was no error in admitting the declarations of the defendant to his son shortly after the killing occurred, not to tell the matter in any other way.

**3.—Same—Evidence—Examining Trial Testimony.**

Where defendant's son had testified the day after the homicide at the examining trial and his testimony was reduced to writing and signed by him, there was no error in introducing this in evidence, where the witness had no independent recollection of the matter until this former written testimony was called to his attention, when he testified as to what defendant said immediately after the shooting.

**4.—Same—Evidence—Isolated Acts—Character of Deceased.**

Isolated acts which would tend to show that deceased was a dangerous man are not admissible in evidence, unless knowledge of them is brought to defendant on trial, at the time of or prior to the difficulty. Following Willis v. State, 49 Texas Crim. Rep., 139, and other cases.

**5.—Same—Evidence—Bills of Exception.**

In the absence of bills of exception, the admissibility or rejection of testimony cannot be considered on appeal.

**6.—Same—Charge of Court—Murder in the Second Degree.**

Where the court's charge of murder in the second degree instructed the jury that the killing must have been unlawful, and defined implied malice under which the act must have been done, and did not command a conviction of defendant if done under the influence of sudden passion aroused by adequate cause, and when considered as a whole, correctly applied the law to the facts, there was no error. Following Carson v. State, 57 Texas Crim. Rep., 394, and other cases; besides, there was no manslaughter in the case.

**7.—Same—Charge of Court—Self-defense—Threats.**

Where the evidence showed threats by the deceased against the defendant, the court should have submitted the law that if deceased, by words or conduct done at the time of the homicide, created a reasonable apprehension or fear in the mind of the defendant that deceased was then and there about to slay him, etc., to acquit. Following Hightower v. State, 56 Texas Crim. Rep., 248, and other cases.

Appeal from the District Court of Collins. Tried below before the Hon. J. M. Pearson.

Appeal from a conviction of murder in the second degree; penalty, seven years imprisonment in the penitentiary.

The opinion states the case.

*J. D. Cottrell* and *Doyle & Brown,* for appellant.—On question of declaration of third parties: Hernard v. State, 79 S. W. Rep., 810; McCandless v. State, 57 S. W. Rep., 672; Darnell v. State, 58 Texas Crim. Rep., 585, 126 S. W. Rep., 1122; Clements v. State, 61 Texas Crim. Rep., 161, 134 S. W. Rep., 728.

On question of introducing examining trial testimony: Spangler v. State, 55 S. W. Rep., 326.

On question of court's charge on murder in the second degree: Waters v. State, 54 Texas Crim. Rep., 322, 114 S. W. Rep., 628; Overcash v. State, 148 S. W. Rep., 701; Best v. State, 58 Texas Crim. Rep., 327, 125 S. W. Rep., 909; Green v. State, 58 Texas Crim. Rep., 428, 126 S. W. Rep., 860; Smith v. State, 57 Texas Crim. Rep., 585, 124 S. W. Rep., 679; Patton v. State, 62 Texas Crim. Rep., 71, 136 S. W. Rep., 459; McDowell v. State, 151 S. W. Rep., 1049; Jackson v. State, 63 Texas Crim. Rep., 351.

On question of court's failure to charge on threats: Rhea v. State, 148 S. W. Rep., 578; Kelly v. State, 151 S. W. Rep., 304; Castro v. State, 66 Texas Crim. Rep., 282, 146 S. W. Rep., 553; Eads v. State, 65 Texas Crim. Rep., 280, 143 S. W. Rep., 1163.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—Appellant was prosecuted, charged with murder, convicted of murder in the second degree, and his punishment assessed at seven years confinement in the penitentiary.

Briefly stated, appellant killed the man who married his stepdaughter. Deceased and his wife had separated on more than one occasion, and were living apart at the time of the tragedy, she being with her step-father. Reports as to what deceased intended to do had been carried to appellant, and on the evening of the killing appellant went by a neighbor's house, and seeing deceased in there called to him and told him he wanted to see him, when they stepped to one side. Appellant states he says: "Will, my boy, what are you making those threats about?" when deceased replied, "No, I never said it, but I am going to kill you," and advanced toward him with a knife in his hand, when he, appellant, shot and killed him. No one heard deceased say, "I am going to kill you," except appellant, and no other person testified to an advance movement by deceased. The State's witnesses say that the only remark they heard deceased make was, "I haven't said anything," when the shots were fired.

Deceased's wife was a very material witness for appellant on this trial, and the State showed by Mrs. Sarah Collins the following fact: "When I heard the shooting I heard the wife of the man shot say: 'I told papa (appellant) not to do that.'" Appellant objected to this testimony. Statements of third parties sometimes become res gestae of a transaction, and we are inclined to think this would be so in this case; the exclamation being made coincident with the firing of the shots would be the event speaking by a party about whom the trouble arose. (Wharton's Crim. Ev., p. 511 and note.) In this case defendant's whole defense is bottomed upon the conduct of deceased towards the person who makes this exclamation and matters growing out of the relations existing between deceased and his wife incident thereto. She is held prominently forward throughout the record; deceased's mistreatment of her, and the threats he states were occasioned by reason of the protection he was giving her. She is not wholly disconnected with the transaction, and it is not a remark of an outsider but one of the actors at least in the event leading up to the homicide. However, if we should be mistaken in this view, the court withdrew the testimony and instructed the jury not to consider it, and we do not think it of that harmful or hurtful nature as to necessitate a reversal of the case. It did not tend to in the least impair his right of self-defense, if his theory was correct. Roberts v. State, 48 Texas Crim. Rep., 210; Hatcher v. State, 43 Texas Crim. Rep., 237, and cases there cited; Trotter v. State, 37 Texas Crim. Rep., 468.

What defendant said to his son shortly after the killing was certainly admissible in evidence when offered by the State, but appellant contends that if this be true, then the witness having no independent recollection of the matter, and that after being shown his former statement, which he identified, he testified: Counsel for defendant: "Do you remember what you heard him say independent of that paper?" A. "Since I have read what is on that paper I have a vivid recollection of what is on that paper." Q. "Do you, independent of that paper, recol-

lect anything you heard that night?" to which he answered, "No."
After further examination the county attorney asked what was his recol-
lection of what he heard appellant say, and witness was permitted to
testify: "As I ran across there to see what the excitement was, and
according to reading that paper which has refreshed my recollection,
Mr. Smith said, 'Don't tell it any other way,' and the boy replied,
'I won't tell it any other way, papa.'" This witness had testified the
day after the tragedy at the examining trial; his testimony was reduced
to writing and signed by him, and in volume 11 of the Encyclopedia
of Evidence it is said: "If a witness, on looking on a writing, is able
to testify that he knows the transaction therein took place, though he
has no present memory of it, his testimony is admissible," citing a long
list of authorities. In the recent case of Misher v. State, 152 S. W.
Rep., 1049, we had occasion to make a thorough investigation of this
question, and therein will be found cited authorities from this and
other States.

The appellant introduced B. T. Reddell, who testified: "That he
lived for seven or eight months just across a fence from Will Lindsey,
about ten feet distant, just a short time before Will Lindsey was killed.
That he and his wife (witness and wife) were eating breakfast one
morning and Lindsey began cursing and kept on cursing with witness'
wife hearing it. That Lindsey was cursing his, Lindsey's wife, cursed
her and called her a damned son-of-a-bitch and other vile words. That
witness remonstrated with Lindsey for cursing in hearing of witness'
wife." Appellant desired to go further and prove that when Reddell re-
monstrated, deceased threatened him, Reddell. The court did not err in
excluding this testimony. Isolated acts which would tend to show de-
ceased a dangerous man are not admissible in evidence, unless knowledge
of them is brought to the person on trial at the time of or prior to the
difficulty. Patterson v. State, 56 S. W. Rep., 59; Willis v. State, 49
Texas Crim. Rep., 139.

The other grounds in the motion complaining of the admissibility and
rejection of certain testimony can not be considered as no bills of excep-
tion were reserved, at least not contained in the record.

One of the principal complaints in the motion for new trial and in
appellant's brief relates to the court's charge on murder in the second
degree, appellant contending (a) it does not require the killing to be
unlawful; (b) does not require the killing to be upon malice; (c) it
commands a conviction of murder in the second degree even though the
killing was done under the immediate influence of sudden passion aris-
ing from an adequate cause; (d) it commands a conviction of murder
in the second degree even though the killing was done in self-defense,
etc. If either of these grounds are tenable it would necessitate a reversal
of the case, but we think under a fair construction of the charge none
of these grounds can be sustained. Appellant cites a great many cases
in his brief, and they correctly state the law as he contends, but did not

the court in his charge define murder in the second degree in almost the very language of those cases? After correctly defining murder in the first degree and applying the law to that phase of the case, the court instructed the jury:

"Malice is also a necessary ingredient of the offense of murder in the second degree. The distinguishing feature, however, so far as the element of malice is concerned, is that, in murder in the first degree malice must be proved, to the satisfaction of the jury, beyond a reasonable doubt, as an existing fact, while in murder in the second degree malice will be implied from the fact of an unlawful killing.

"Implied malice is that which the law infers from or imputes to certain acts, however suddenly done. Thus, when the fact of an unlawful killing is established, and the facts do not establish express malice beyond a reasonable doubt, or tend to mitigate, excuse or justify the act, then the law implies malice, and the murder is in the second degree; and the law does not further define murder in the second degree, than if the killing is shown to be unlawful, and there is nothing in evidence on the one hand showing express malice, and on the other hand there is nothing in evidence that will reduce the killing below the grade of murder, then the law implies malice, and the homicide is murder in the second degree.

"Every person is permitted by law to defend himself against any unlawful attack, reasonably threatening injury to his person, and is justifiable in using all necessary and reasonable force to defend himself.

"Homicide is justified by law when committed in defense of one's person against any unlawful attack, made in such a manner as to produce a reasonable expectation or fear of death or some serious bodily injury.

"If you believe from the evidence beyond a reasonable doubt, that with implied malice aforethought in the County of Collin and State of Texas, on the 21st day of January, 1912, as alleged, with a deadly weapon, did unlawfully shoot with a pistol and thereby kill Will Lindsey as charged in the indictment, you will find him guilty of murder in the second degree, and assess his punishment at confinement in the State penitentiary for any period that the jury may determine, and state in their verdict provided it be not less than five years."

That the court instructs the jury the killing must have been unlawful is readily seen; the court correctly defines implied malice in this charge under all our decisions, and correctly tells the jury the killing must have been done on implied malice aforethought before they would be justified in finding appellant guilty of murder in the second degree. In no part of this charge does it command the conviction of appellant if done under the influence of sudden passion aroused by an adequate cause, and we will here state we do not think the evidence raises the issue of manslaughter, for we can conceive nothing in evidence upon which adequate cause to create passion could be predicated. Appellant testified that at Williford's he saw Will Lindsey (deceased) sitting there

and spoke to him, when deceased replied, "Howdy, Noel," and then appellant says he told Will he wanted to see him a minute and they walked together. That he then asked will, "What are you making these threats about?" when deceased replied he had not said it, but "I am going to kill you," and advanced on him with a knife, they being the width of a window apart; that he fired and deceased stopped, but came at him again with his knife in his hand, and he fired three more times; that the knife was open." This, if true, made a case of justifiable homicide and he should have been acquitted on his plea of self-defense. As said by this court in Eggleston v. State, 59 Texas Crim. Rep., 542, that the impression prevails to some extent that in every case where self-defense is an issue the court must charge on manslaughter, but this is not the law, and for a list of authorities so holding see Kelly v. State, 151 S. W. Rep., 304.

It is not fair to the court to take one paragraph of the charge and criticise it, when viewed in the light of the remainder of the charge no error is presented. The court defined implied malice in language so frequently approved by this court that it seems useless to cite the authorities, but see Douglas v. State, 8 Texas Crim. App., 520; Neyland v. State, 13 Texas Crim. App., 536; Gonzales v. State, 30 Texas Crim. App., 203; Hernandez v. State, 53 Texas Crim. Rep., 468; Banton v. State, 53 Texas Crim. Rep., 251; Smith v. State, 45 Texas Crim. Rep., 552; Carson v. State, 57 Texas Crim. Rep., 394.

The court followed this with a charge on manslaughter, and self-defense, and while we have held that the court need not have charged on manslaughter under the evidence adduced on this trial, yet the charge as given is not subject to the criticism contained in the motion. It is a fair application of the law, and presents that issue more favorably to appellant than the law authorized.

However, the court's charge in applying the law of self-defense to that species of case wherein threats are shown to have been made has been held to be erroneous in a number of cases. Gaines v. State, 53 S. W. Rep., 625; Sebastian v. State, 42 Texas Crim. Rep., 84; Watson v. State, 50 Texas Crim. Rep., 171; Hightower v. State, 56 Texas Crim. Rep., 248, and appellant's criticism of this paragraph of the charge seems to be justified. Appellant testified and so did his son that on that evening he had just received a threatening message from deceased about going to come down to appellant's house, and what he was going to do to him. The State sought to raise an issue that this threat had not been made nor communicated to appellant by having a witness testify that the father was seeking to induce the person who communicated the threat to swear falsely. The court should have affirmatively informed the jury that if deceased had made the threats or appellant had been so informed, and deceased by his words or conduct or any act then done created a reasonable apprehension or fear in the mind of appellant that deceased was then and there about to slay him or do him serious bodily injury, or the jury had a reasonable doubt of that fact, they would

acquit him. This was the material issue in the case in so far as appellant's theory was concerned, and he was entitled to have it fairly and fully presented to the jury, and on this as on all other issues he was entitled to have the reasonable doubt applied.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*