## John Brown v. The State.

### No. 2560.   Decided May 20, 1903.

**1.—Murder—Manslaughter—Adultery with Wife—Charge.**

On a trial for murder, where the defense was adultery of the deceased with the wife of defendant, a charge upon manslaughter was not correct which told the jury that "adultery of the person killed with the wife of the person guilty of the homicide [is adequate cause], provided the killing occurred as soon as the facts of an illicit connection was discovered," and as soon thereafter as defendant met deceased; and a conviction for manslaughter was also authorized if defendant, at the time of the killing, was laboring under such passion or anger, rage, sudden resentment or terror as to render his mind incapable of cool reflection.

**2.—Charge of Court.**

In a charge of the court the different paragraphs must be considered together; and, when so considered, a subsequent paragraph may cure any apparent error in a preceding one as would, by itself, be calculated to injure the rights of defendant.

**3.—Manslaughter—Charge.**

See opinion for a charge upon manslaughter held to be correct, the defense being adultery of the deceased with the wife of defendant.

**4.—Jury and Jury Law—Misconduct—Drinking Whisky.**

The drinking of whisky by a jury while considering of their verdict, is reprehensible and should not be tolerated, but such conduct will not invalidate the verdict, unless it be shown that some of the jurors became intoxicated, or that whisky was drunk in excess.

**5.—Murder—Confession—Inducement.**

Defendant, after his arrest and after he was warned by the sheriff, said: "Well, suppose I killed him about my wife, would that help me?" To which the sheriff replied, "Well, it might." Held, this was no such inducement as would invalidate the confession subsequently made by defendant.

Appeal from the District Court of Harrison.   Tried below before Hon. Richard B. Levy.

Appeal from a conviction of murder in the second degree; penalty, thirteen years imprisonment in the penitentiary.

The indictment charged appellant with the murder of Robert Washington, on the 1st of August, 1900, by shooting him with a gun.

The case in brief is this:   Brown suspected deceased was intimate with his wife.   Brown's wife went to her home from a gathering one night with deceased, and Brown came a little later and found his wife and deceased on the floor together.   Brown raised a row and assaulted deceased with an ax, but deceased by his superior strength prevented any battery.   Brown then ordered deceased to keep away from his house and ordered his wife not to go with deceased.

A few days after this Killingsworth saw Brown's wife with deceased out in the woods together in a compromising position, and told Brown of it.   A few days after this Brown went to his home after his day's work, and a little girl, his wife's niece, told him that Robert Washington had been there that evening looking for his horse, and Lizzie Brown was not there when Robert came; that Lizzie came home soon afterward and asked if Robert Washington had been there.   The girl told her that Robert had been there.

Lizzie then dressed herself and went to Frank Washington's to sit up with a sick child. She left before Brown came home. She was seen with deceased on the side of the road leading to Frank Washington's about dark. She went on to Frank Washington's and deceased came later. When appellant went home and found that Robert had been to his house, and that his wife had asked about Robert and had gone, he took his gun and followed. He went to Frank Washington's and saw his wife and Robert out on the gallery together, and would not shoot then for fear of shooting some other person. In a few moments Robert went into the house and sat by a window; he then shot him.

*F. H. Prendergast,* for appellant, as to defendant's right to kill an adulterer, cited Penal Code, art. 672; Price v. State, 18 Texas Crim. App., 474. As to misconduct of jury in drinking whisky, Code Crim. Proc., art. 817, subdivs. 7, 8. Jury shall have no liquor. Code Crim. Proc., art. 727; Jones v. State, 13 Texas, 168; Jack v. State, 26 Texas, 1; March v. State, 44 Texas, 64; Webb v. State, 5 Texas Crim. App., 596; Tuttle v. State, 6 Texas Crim. App., 556.

*Howard Martin,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at confinement in the penitentiary for a term of thirteen years.

In his motion for new trial appellant complains of the following portion of the court's charge: "Insulting words or conduct of the person killed towards the wife of the party guilty of the homicide, provided the killing take place immediately upon the happening of the insulting conduct." Appellant insists this charge was error, because there was no question as to insulting words and conduct towards defendant, as the same would be understood by the jury, and because the law permits the husband to kill the adulterer as soon as they meet after the husband is informed of the insulting words. Paragraphs 11 and 12 of the court's charge must be considered together, and they are as follows:

"11. By the expression 'adequate cause' is meant such as would commonly produce a degree of anger, rage, sudden resentment or terror in a person of ordinary temper sufficient to render it incapable of cool reflection. The following are deemed adequate causes: (1) Adultery of the person killed with the wife of the person guilty of the homicide, provided the killing occurred as soon as the facts of an illicit connection is discovered. (2) Insulting words or conduct of the person killed towards the wife of the party guilty of the homicide, provided the killing takes place immediately upon the happening of the insulting conduct. (3) Any condition or circumstance which is capable of creating and which does create in the mind of the person guilty of the

homicide such a degree of anger, rage, sudden resentment or terror as to render it incapable of cool reflection is adequate cause.

"12. Now, if you believe from the evidence in this case that defendant had heard of the adultery of Robert Washington with his wife, and that as soon as the fact of the illicit connection was discovered he shot and killed the said Robert Washington, in said county and State, about August 1, 1900, and you further find that at the time of the killing there was aroused in the mind of defendant such a degree of anger, rage, sudden resentment or terror which rendered it incapable of cool reflection, then you will find defendant guilty of manslaughter. Or if you find from the evidence that defendant saw deceased use insulting conduct toward his wife and that he immediately upon the happening of the insulting conduct shot with a gun and killed deceased at time and place mentioned in the indictment; or if he had been informed of insulting conduct of deceased toward his (defendant's) wife, and that as soon thereafter as defendant met deceased he shot with a gun and killed said deceased at time and place in indictment charged; and if you further find that at the time of the killing his mind was aroused to such a degree of anger, rage, sudden resentment or terror as to render it incapable of cool reflection, then you will find defendant guilty of manslaughter. Or if you believe from the evidence that from any condition or circumstance which was capable of creating in the mind of a person of ordinary temper such a degree of anger, rage, sudden resentment or terror as to render it incapable of cool reflection, and if you further believe that such condition or circumstance, whatever it may have been, did arouse in the mind of defendant such a degree of anger, rage, sudden resentment or terror as to render it incapable of cool reflection, and that while in such state of mind he shot and killed Robert Washington at time and place in indictment alleged, then you will find him guilty of manslaughter.

"By the term 'meet' as used in the foregoing charge signifies that the parties were brought into such proximity as would enable defendant to act in the premises whether armed or unarmed."

We think when these paragraphs are considered together there is no such error apparent as would be calculated to injure the rights of appellant.

Appellant also objects to the twelfth paragraph quoted above on the ground that the court authorized the jury to convict appellant of manslaughter if he was laboring under passion aroused from adequate cause at the time of the killing. This we understand to be the law. Appellant, however, insists that defendant would not be guilty at all. This clearly is not correct. Various other objections are urged to the twelfth paragraph of the charge, but in our opinion there is no error in the charge. An inspection of the evidence shows that the charge is as favorable to appellant as he could expect.

Appellant insists that a new trial should be granted because the jury

drank whisky during their deliberations, insisting that they became drunk. However, the record does not support this contention. It shows reprehensible conduct on the part of the jury in drinking whisky, and for this they were fined by the court. However, it does not appear that any of the jurors were intoxicated, or that the whisky was drunk in excess or while the jury were deliberating on their verdict. We have animadverted on this matter in various cases before, and must repeat, that it is such conduct as should not be tolerated.

By the second bill of exceptions it is made to appear: "The State introduced G. W. Munden, who testified that he was sheriff of Harrison County, in August, 1900; that he arrested John Brown and warned him that anything he might say to me would be used in evidence against him. Defendant said: 'Well, Mr. Munden, suppose I killed him about my wife, would that help me?' and Munden replied: 'Well, it might.' Defendant thereupon objected to the witness relating further what defendant said to him, because it appeared that inducements were held out to defendant. The court overruled the objection and permitted the witness to testify over defendant's objection: 'Well, I killed him, and I killed him about my wife; I went home that evening and found that my wife had gone over to Frank Washington's, and after I ate supper I got my gun and went over there; I started to kill Robert once while they were on the gallery eating melons, but there were some other people out there, and I was afraid I would kill somebody else; but I waited until he went back in the house and sat down in front of the window; he was sitting on one side of a table and my wife on the other, and I shot him through the window.'" In our opinion this confession was admissible, under the following authorities: Robinson v. State, 35 Texas Crim. Rep., 180; Williams v. State, 3 Texas Ct. Rep., 595, 65 S. W. Rep., 1059; Grimsinger v. State, 44 Texas Crim. Rep., 1.

No error appearing in this record, the judgment is affirmed.

*Affirmed.*

[Appellant's motion for rehearing was overruled without a written opinion.—Reporter.]