## HENRY MYERS v. THE STATE.

### No. 2705.   Decided November 5, 1913.

**1.—Murder—Bills of Exception—Practice on Appeal.**

In the absence of bills of exception, the overruling of applications for a change of venue and continuance can not be considered on appeal.

**2.—Same—Jury and Jury Law—Challenge.**

Where the juror on his examination testified under oath that notwithstanding his opinion he could render an impartial verdict on the law and the evidence, and the court, in his discretion admitted him as competent to serve, there was no error in overruling a challenge for cause.

**3.—Same—Evidence—Declarations of Defendant.**

Where the statement of defendant which was introduced in evidence presented the matter in as favorable light to the defendant as did any of the testimony adduced on the trial, there was no error.

**4.—Same—Charge of Court—Cooling Time.**

Where, upon trial of murder, the court instructed on the different degrees of murder and manslaughter, and his failure to instruct on cooling time was more favorable to defendant than if he had done so, there was no error.

Appeal from the District Court of Grayson. Tried below before the Hon. J. M. Pearson.

Appeal from a conviction of murder in the second degree; penalty, forty years imprisonment in the penitentiary.

The opinion states the case.

*C. Huggins* and *H. D. Cumby,* for appellant.—On question of court's charge on manslaughter: Ware v. State, 152 S. W. Rep., 1074; Love v. State, 158 S. W. Rep., 525; Morris v. State, 142 S. W. Rep., 876.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—Appellant was prosecuted for murder and convicted of murder in the second degree and his punishment assessed at forty years confinement in the State penitentiary.

There are a number of grounds in the motion for new trial we can not consider, as no bills of exceptions were reserved, and the matters are not presented in a way we would be authorized to review them,—such as, the action of the court in overruling the application for a change of venue, overruling the application for a continuance, etc. In the absence of bills of exception these matters are not reviewable by this court.

There are three bills of exception in the record, all of them relating to the action of the court in overruling appellant's challenge for cause as to certain jurors,—Messrs. Thompson, Owens and Hardaway. The bills show that Mr. Hardaway served on the jury, and as to this juror the bill shows:

"J. A. Hardaway on being examined as to his qualification to sit as a juror testified substantially as follows: I have no conscientious scruples against the infliction of death as a punishment for crime. I read an account of this killing. I don't believe I have talked to anybody who claimed to know the facts of the case. Q. Have you formed an opinion as to the guilt or innocence of the defendant? A. From what I read I did. If taken as a juror I could set that opinion aside and try him on the evidence as introduced from the witness stand and certainly would do that. I would try him on the evidence introduced from the witness stand, and under the charge as given me by the court. I don't think that opinion would likely influence me in any way.

"Cross-examined the witness testified further as follows: I was in Sherman at the time of the homicide. I did not see the body of the deceased. I don't remember that I ever talked to my clerks in the store about it, I have talked to other parties about it. I don't believe

any one ever expressed their opinion in my presence as to the guilt or innocence of the defendant. I don't know that I ever expressed my opinion. I am not sure I have not. I don't know whether I have or not. From what I read of it of course I have an opinion. Q. Is that opinion adverse to defendant? A. Sure, yes. Q. Now it would take evidence to remove that opinion, wouldn't it? A. Yes, from what I read of it—I don't know anything else. I have heard it talked quite frequently. If I went into the jury box I would still have that opinion, and it would take evidence to remove that opinion. If there was no evidence introduced that opinion would influence me. Q. In other words, you would be governed by the opinion you have unless evidence was introduced to remove it? A. Well, owing to the evidence, yes, the evidence might be altogether different from what I have heard, you understand I don't know about that. Q. The proposition is this, unless evidence was introduced to remove that opinion, that opinion would naturally influence you, wouldn't it? A. Well, of course, yes, I would be governed by my opinion I have in regard to the matter.

"Challenged for cause. Examined again by State's counsel the juror testified further as follows: Q. You stated to me you would not consider that opinion that you have as a juror—as a man and what you read is on your mind, you have that opinion? A. Certainly. Q. As a juror serving in the case would you consider that opinion and allow that opinion to influence you after you had been sworn as a juror and the evidence was offered from the witness stand? A. I would be governed of course by the evidence, not by my opinion. I wouldn't have that opinion at all, that is a matter I would discard, and would not consider it as evidence in this case at all. It would not have any influence, according to the evidence. If you just read the indictment and offered no evidence at all, I would not convict the defendant, I would have to acquit him if I had no evidence. Q. Then that opinion you have would have no influence on you at all, you wouldn't require any evidence to remove it and wouldn't require any to add to it, you wouldn't consider it as a juror? A. No. The court: You just formed the opinion, did you, from reading about it in the papers? A. Yes. I think I read it in the Dallas News or the paper here, the Sherman Democrat. It did not contain what purported to be the evidence, just the circumstances as well as I recollect. I did not read any evidence in it. I do not think my opinion is so definite and fixed as to influence me at all in making up my verdict."

Subdivision 13 of article 692, Code of Criminal Procedure, reads as follows: "That from hearsay or otherwise there is established in the mind of the juror such a conclusion as to the guilt or innocence of the defendant as will influence him in his action in finding a verdict. For the purpose of ascertaining whether this cause of challenge exists, the juror shall first be asked whether, in his opinion, the conclusions so established will influence his verdict. If he answers in the affirmative,

he shall be discharged; if he answers in the negative, he shall be further examined by the court, or under his direction, as to how his conclusion was formed, and the extent to which it will affect his action; and, if it appears to have been formed from reading newspaper accounts, communications, statements or reports or mere rumor or hearsay, and, if the juror states on oath that he feels able, notwithstanding such opinion, to render an impartial verdict upon the law and the evidence, the court, if satisfied that he is impartial, and will render such verdict, may, in its discretion, admit him as competent to serve in such case; but, if the court, in its discretion, is not satisfied that he is impartial, the juror shall be discharged."

In subdivisions 3 and 4 of sec. 747 of White's Ann. Code of Criminal Procedure will be found a long list of cases construing this provision of the Code.

The other two bills are in substance the same as the bill above quoted, except it is not shown they served on the jury, and under all the decisions of this court the trial court did not err in overruling the challenge for cause, he evidently holding that they were impartial, and could and would render a verdict in accordance with the law and the evidence, their opinions being but vague impressions formed from reading newspaper reports of the occurrence.

The statement of defendant, which was introduced in evidence, reads as follows:

"My name is Henry Myers. Mr. Albert Brittain was at the camp January 4 before dinner and he and I had some trouble; he discharged me and told me to leave the camp; this was before dinner; after that I came to Sherman and was here in town a while and left here about 4:30 o'clock and went back to the other camp where I was this morning. Mr. Brittain came to this camp this morning about 8 o'clock and I was going to Dike's tent. I went in and Mr. Brittain came into the tent and said to me 'didn't I tell you to leave this camp'? I said 'yes, sir,' and I told him I was not going until I got my money. He said you are going right now, and said go on out of this tent. I went out of the tent. He came out behind me. He said get on up the road and then he hit me twice and kicked me. Jim Carr, Monia Collins and Joe Williams and Dike and a negro called Chuck, Jackson Booker and I. C., a tall slim negro, were there and saw this. After this I went back to the tent where I was staying; this was Napolian Fisher's tent, I went in and sat on a box, I then got up and got the gun from under the bed—I sat on the box about five minutes—after I got the gun I came out of the tent and I saw Mr. Brittain coming toward me. I stepped about ten feet toward—he got within about sixty yards of me and stopped and talked to Napolian Fisher, and I heard him tell Napolian he had better make me leave the camp if he didn't he was going to kill me. He then stepped toward me and looked me in the face. I then raised the gun and pointed it toward him; he said, 'Henry, don't,' after he said this I shot him once. He fell to the

ground. I put the gun back in the tent. I got my coat and went out into the road and walked and ran over to the camp which is south about four miles of this camp where the trouble was. I was in Si's tent when I was arrested. I did not tell anybody about the shooting. I saw some white boys going toward town walking. After Mr. Brittain and I had our trouble when he hit me there at Dike's tent he went over across the creek about 100 yards and then he came back toward the tent where I was. I was watching him all the time and kept my eye on him until I shot him. The same parties were present, when I shot him that were there when he hit me. It was not over twenty minutes after he hit me until I shot him. I was still mad at him for hitting me and I wouldn't have shot him if he had not hit me. I am 22 years old." This presents the matter in as favorable light to defendant as does any of the testimony adduced on the trial.

The court submitted murder in the first and second degree in language not complained of in the motion for new trial. He also submitted manslaughter, defining the offense in the usual language, and instructed the jury:

"You are instructed that, if deceased, with a pistol, did, about the time or just prior to the killing (if defendant killed him) struck defendant in the face or elsewhere, or made any other assault or battery on defendant producing pain or bloodshed; or, if, in a serious personal conflict, great injury was inflicted upon defendant by deceased, by means of a weapon or other instrument of violence, then, and in either event, this would be adequate cause."

We think this charge peculiarly applicable to the facts in this case as made by the testimony offered by appellant. In instructing the jury that if deceased, with a pistol, did, about the time, or just prior to the killing, strike defendant on the face or elsewhere, or make an assault on defendant, causing pain or bloodshed, this would be adequate cause, and in not instructing them on cooling time, was more favorable to defendant than he had a right to expect, and if error, it was error of which he would not be heard to complain. According to defendant's testimony it was twenty minutes after he was assaulted by deceased before he shot him. And he further shows that during all that time he kept his eyes on deceased and shot him as soon as he came near enough to him to shoot, without a word being spoken. If a charge on cooling time had been given under the evidence in this case, the jury would certainly have found that sufficient time had expired for his mind to cool, and in submitting manslaughter as he did, without charging on the issue of cooling time, the charge as given was more favorable to defendant than he had a right to expect or demand.

The judgment is affirmed.

*Affirmed.*