## A. P. YOUNG v. THE STATE.

No. 4694.   Decided November 14, 1917.

Rehearing denied December 21, 1917.

**1.—Robbery—Reproduction of Testimony—Examining Court.**

Where, upon trial of robbery, it was shown that one of the main State's witnesses had left this State and was beyond the jurisdiction of the court, there was no error in permitting the county attorney who had reduced the testimony of the absent witness to writing during the examining trial of defendant, and who testified upon the instant trial that to give the details of said examining-court testimony he would have to read the written statement of said witness, which, over the objections of defendant, the court permitted, there was no reversible error. Davidson, Presiding Judge, dissenting.

**2.—Same—Constitutional Law—Reproduction of Testimony—Statutes Construed.**

The contention that the reproduction of testimony under the circumstances defined in Article 834, C. C. P., is violative of the Bill of Rights of the Constitution of Texas, Article 1, Section 10, is not well taken. Following Porch v. State, 179, and other cases.

**3.—Same—Examining Court Testimony—Statutes Construed—Presumption.**

Where, upon trial of robbery, one of the main State's witnesses was shown to be permanently beyond the limits of the State, and all the papers in the examining court were before the court in the instant trial, who permitted a witness to read from the statement of the absent witness made in said examining court to refresh his memory, there was no error, and the contention that under Articles 300 and 832, C. C. P., that said testimony was not properly reduced to writing as required, was untenable, and it must be presumed that such evidence was secondary and permissible, as such testimony of the absent witness could have been reproduced by oral proof. Following Dunlap v. State, 9 Texas Crim. App., 51 Texas Crim. Rep., 7, and other cases.

**4.—Same—Evidence—Confessions.**

Where, upon trial of robbery, the State introduced the confession of the defendant which was in writing and in due form in every respect, to which he objected on the ground that it was not voluntary, but this issue was submitted in a proper charge to the jury, there was no reversible error. Following Brown v. State, 45 Texas Crim. Rep., 139, and other cases.

**5.—Same—Rehearing—Reproduction of Testimony.**

Where appellant, on rehearing, complained that this court committed error in deciding that the court below properly admitted in evidence the written statement of an absent witness made during an examining trial, and who was then beyond the jurisdiction of the court, but the record showed on appeal that the State's witness who testified to such reproduction of testimony, testified that he could reproduce it better by reading the notes he had made than by reciting it without said notes, there was no reversible error.

Appeal from the District Court of McLennan. Tried below before the Hon. Richard I. Munroe.

Appeal from a conviction of robbery; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Farmer & Farmer* and *Taylor & Taylor,* for appellant.—On question of reproduction of testimony: O'Connell v. State, 10 Texas Crim. App., 569.

On question of confession: Clayton v. State, 31 Texas Crim. Rep., 490; Robertson v. State, 195 S. W. Rep., 602.

*E. B. Hendricks,* Assistant Attorney General, for the State.

MORROW, Judge.—Appellant appeals from a sentence condemning him to confinement in the State penitentiary for a term of five years on conviction of the offense of robbery.

The State reproduced the testimony of R. W. Echols, the alleged injured party, given at the examining trial of appellant, at which he was present. D. C. Woods, who was assistant county attorney, preliminarily in reproducing the testimony, testified that he attended the examining trial of appellant in his capacity as assistant county attorney, remembered R. W. Echols testifying; that he testified to a robbery that occurred near the railroad; that to give the details he would have to read the written statement, in regard to which he said: "This is the testimony that I took down at the time. I took it down correctly. But I can give it better by reading this than I could by reciting it." He further reiterated that he had the testimony down at the examining trial on paper which he had in his hand and that it was his way of preparing the testimony in such trials. He was then permitted by the court to read from the writing in his possession, the alleged testimony of the witness. Appellant objected to the evidence on several grounds which are disclosed in the bill of exceptions No. 1, which appears to be a reproduction of the proceedings while this witness Wood.

was upon the stand, in detail as recorded by the stenographer. The objections made we quote from the language of appellant's attorney in reserving the bill: "We reserve our bill of exception to all of that, and I want the bill to show that the assistant county attorney who took the examining trial in this case was permitted to read the testimony of the prosecuting witness, Echols, in the final trial of this case in the District Court." The court: "You can show the facts. He testified that he took it down and heard him testify and it was correctly taken down." "And on the ground that the statement read to the jury was not properly authenticated by the justice of the peace. It was not signed by the witness Echols, nor was it signed or shown to have been drawn up by the justice of the peace, nor was it shown to have come from the possession of the district clerk's office." The court: "All right. Of course, if that was all done, you wouldn't have to have Mr. Woods here. You could just shove it in and introduce it." "We object to it further on the ground that the statute provides that every man shall be confronted with—by the witnesses against him, and the testimony in this case showing that the State witness whose testimony is reproduced here is at this time residing in the State of Alabama."

The record shows that the justice of the peace, who conducted the examining trial, was introduced as a witness by the State and testified with reference to certain papers which were presented at the trial as follows: "That is the examining trial record in that case. Those are the papers in that examining trial. They were sent to the district clerk's office by me." In discussing this bill in their brief appellant's counsel stress some matters which are not raised in the exceptions quoted. As to what ruling the court made and exceptions were taken, we are confined to the bill of exceptions. However, we are taking up the matters presented in the brief. Article 300 of our C. C. P. relating to examining trials is as follows: "The testimony of each witness examined shall be reduced to writing by the magistrate or some one under his direction, and shall then be read over to the witness, or he may read it over himself; and such corrections shall be made in the same as the witness may direct; and he shall then sign the same by affixing thereto his name· or mark. All the testimony thus taken shall be certified to by the magistrate taking the same." Articles 832, 833, and 834 are as follows:

"Article 832. Depositions taken in criminal actions shall not be read unless oath be made that the witness resides out of the State; or that, since his deposition was taken, the witness died; or that he has removed beyond the limits of the State; or that he has been prevented from attending the court through the act or agency of the defendant; or by the act or agency of any person whose object was to deprive the defendant of the benefit of the testimony; or that, by reason of age or bodily infirmity, such witness can not attend."

· "Article 833. When the deposition is sought to be used by the State, the oath prescribed in the preceding article may be made by the district or county attorney, or any other credible person; and, when

sought to be used by the defendant, the oath shall be made by him in person."

"Article 834. The deposition of a witness taken before an examining court or a jury of inquest, and reduced to writing, and certified according to law, in cases where the defendant was present when such testimony was taken, and had the privilege afforded him of cross-examining the witness, may be read in evidence as is provided in the two preceding articles for the reading in evidence of depositions."

The contention that the reproduction of testimony under the circumstances defined in our statute, article 834, supra, is violative of the Bill of Rights of the Texas Constitution, article 1, section 10, has frequently been considered by this court where the reproduced testimony was of a witness who died after giving his testimony and as to that of one who had removed beyond the limits of the State. A number of these cases are listed in Branch's Ann. P. C., p. 47, sec. 76. Perhaps on no subject touched in the history of the court has there been displayed greater research or more profound learning than is to be found in some of these decisions presenting the views of distinguished jurists. This is notably true of the majority opinion and dissenting opinion in the Cline case, 36 Texas Crim. Rep., 337, where the reproduced evidence was rejected. The views expressed by this court in earlier decisions were contrary to the conclusion reached by the majority in the Cline case. Black v. State, 1 Texas Crim. App., 381; Ray v. State, 4 Texas Crim. App., 455; Dunlap v. State, 9 Texas Crim. App., 188; Simms v. State, 10 Texas Crim. App., 166; Potts v. State, 26 Texas Crim. App., 665; McGee v. State, 31 Texas Crim. App., 74; Bennett v. State, 32 Texas Crim. Rep., 216; Meyers v. State, 33 Texas Crim. Rep., 216; Clark v. State, 28 Texas Crim. App., 195; Parker v. State, 18 Texas Crim. App., 90; Johnson v. State, 26 Texas Crim. App., 640; Peddy v. State, 31 Texas Crim. App., 547; Scruggs v. State, 35 Texas Crim. Rep., 622; Connor v. State, 23 Texas Crim. App., 383; Garcia v. State, 12 Texas Crim. App., 340. The rule in the Cline case was abandoned by a divided court in the opinion in Porch's case, 51 Texas Crim. Rep., 7, in a case where the witness whose testimony was reproduced was dead at the time of the trial; and in the Hobbs case, 53 Texas Crim. Rep., 71, where the witness was shown to be beyond the jurisdiction of the State. Without attempting to review the subject, the writer is of the opinion that the rule declaring the admissibility of such testimony is so generally recognized as proper that it should be adhered to. It has been recognized as the true rule not only in many of the decisions of our own court but by the courts of last resort in most of the States of the Union, and is generally sanctioned by the text-writers. Wharton's Crim. Ev., vol. 1, sec. 227 and sec. 231; Wigmore on Evidence, vol. 2, sec. 1399, p. 1759; 25 L. R. A. (N. S.), p. 882, note 13; 13 Am. & Eng. Ann. Cases, p. 973; Vernon's Ann. P. C., pp. 768 to 770, also p. 27.

It appears that proof was made on the trial that R. W. Echols, the absent witness, had removed to, and was a resident of, the State of

Alabama. This also appears from the bill of exception and brings the predicate within one of the alternative provisions of article 832, supra. It is insisted, however, in the brief that there was an absence of affirmative showing that the testimony was not reduced to writing by the magistrate under the formality required by article 300, C. C. P., supra, and that in the absence of such proof the presumption that it had been so reduced to writing would prevail and that presumption would disclose that the manner in which the testimony was reproduced was by secondary and not by primary evidence. It was held in Sullivan's case, 6 Texas Crim. App., 319, that the writing under the certificate of the magistrate was primary evidence; and in the O'Connell case, 10 Texas Crim. App., 569, that in the absence of proof of the contrary the presumption of the performance of his duty by the magistrate would exist. That the testimony of a witness at an examining trial may be reproduced by oral proof has been the subject of judicial decision in a number of cases, many of which are listed in the notes in the case of the State against Hefflin, 25 L. R. A. (N. S.), p. 882, and the right to use oral testimony where the written testimony has been lost or is excluded for irregularities, or where the evidence was not reduced to writing, has been affirmed. Dunlap v. State, 9 Texas Crim. App., 179; Potts v. State, 26 Texas Crim. App., 663; Kirby v. State, 23 Texas Crim. App., 13; Stevens v. State, 38 S. W. Rep., 167.

In the present case if the point is raised by the bill of exceptions we think it is met by the proof as disclosed in the record. The justice of the peace is shown to have brought all the papers from the examining court, or at least to have identified them at the trial. The predicate for the introduction of secondary evidence was for the court, and it appears from the bill that responding to the objection of counsel that the written evidence was not certified by the magistrate the court stated in effect that that was true. The papers were then all before him. Moreover, we think it satisfactorily appears from the bill that the only record made of the testimony of Echols at the examining trial was that made by the assistant county attorney who was used as a witness to reproduce it. The complaint that there was error in permitting the witness Wood to read the statement that he had reduced to writing does not, we think, under the circumstances, constitute error. He testified that he remembered the substance of the testimony as given in the writing which was in his possession, and that he could give the details better by reading the writing than by undertaking to recite it. From this it was apparent that he was using the writing to refresh his memory and to enable him to accurately state the testimony given. It was not the introduction of the writing but the introduction of the recollection of the witness, refreshed from the writing. No authority condemning such practice has been pointed out. We find in Lake v Commonwealth, 31 Kentucky Law Reports, 1323, 104 S. W. Rep., 1003, that the same practice was followed and approved by the court. See also Wharton, Crim. Ev., vol. 1, sec. 231. The State introduced the confession of appellant, which was in writing and in form in every

respect. Objection was made to it on the ground that it was not voluntary and evidence upon that subject was introduced.

Appellant testified, in substance, that the confession was brought about by promises and by personal violence and the fear of serious injury. This was controverted by the State's testimony in every particular except that it was shown before the appellant made the statement the chief of police slapped him. It was claimed that it was not a serious blow and was given to the appellant because of impudent language. This transaction appears to have been made some time before the confession was given and that the chief of police was not present when the confession was made. The court submitted to the jury the question as to whether the confession was freely made, without compulsion or persuasion and informed them that unless it was so made it could not be considered. The jury might have reached, under the evidence, a conclusion adverse to the voluntary nature of the confession. There was not sufficient evidence of such promises as would condemn it. Thompson v. State, 19 Texas Crim. App., 616; Brown v. State, 45 Texas Crim. Rep., 139; Branch's Ann. P. C., p. 41; and under the conflicting evidence as to compulsion, we do not feel authorized to disturb the finding of the jury responding to the instruction by the court to disregard the confession if it was not voluntary.

Finding no reversible error the judgment of the lower court is affirmed.

*Affirmed.*

DAVIDSON, Presiding Judge (dissenting).—While I do not believe it is legal to reproduce the testimony of the absent witness, but in view of what I have heretofore written I deem it unnecessary to write further on the question.

ON REHEARING.

December 21, 1917.

MORROW, Judge.—Counsel for appellant insists that there was error in permitting the assistant county attorney, Woods, to read to the jury the written statement taken down by the witness at the preliminary trial. On this subject the following quotation from the bill is taken: "The witness: Well, this is his testimony that I took down at the time. The court: Did you take it down correctly? The witness: Yes, sir. Mr. Taylor: We presume that is true. The witness: But I can give it better by reading this than I could by reciting it. The court: I think this is all right, if you answer it is correctly taken down and he delivered it. Any objection to that? Mr. Taylor: What is he trying to do? Introduce the statement? Mr. McNamara: No, sir; we are not introducing the statement. The court: He says that is an exact statement of what he made and he took it down at the time he delivered it and he will swear that it is correct."

Mr. Wharton, in his work on Criminal Evidence, section 231, uses the following language: "The evidence of the original witness may be proved by the notes of counsel, or of the judge, or of a shorthand

reporter sworn to by the producing witness; nor is it necessary that the notes should purport to give more than the substance of the language of the original witness. In such cases the notes are not evidence per se; their only value being as a means of refreshing the memory of the witness."

From Lake v. Commonwealth, 104 S. W. Rep., 1006, we take the following quotation: "Appellant also contends that the trial court erred in admitting the testimony of C. E. Rankin, official stenographer of the court, and permitting him to read from the transcript of evidence Mrs. Chambers' testimony in reference to appellant's guilt of the crime charged, given on the examining trial, which transcript was made by Rankin from his stenographic notes of her testimony taken while she was on the witness stand. As Mrs. Chambers' death occurred shortly after the examining trial, the question of whether her testimony given on that trial could be read from the transcript of the official stenographer of the trial in the circuit court was to be determined from the facts elicited by the questions asked the latter, and his answers thereto, before allowing him to read the transcript of her testimony to the jury. Therefore it was proper to prove by him that he had accurately taken her testimony in shorthand and correctly transcribed it, and that it was all contained in the transcript as read by him to the jury, and also proper to show by him that he was an experienced and skilled stenographer. It follows, therefore, that the lower court did not err in allowing the official stenographer to read to the jury the transcript of Mrs. Chambers' testimony."

Authorities supporting this conclusion are cited in the opinion, as well as under the text in Wharton's Criminal Evidence.

Constrained to think the conclusion originally reached was correct, the motion for rehearing is overruled.

*Overruled.*