## Carl Parker v. The State.

### No. 6447. Decided December 7, 1921.

### Rehearing Denied January 18, 1922.

1.—Murder—Change of Venue—Bill of Exceptions—Practice on Appeal—Statement of Facts.

Where, upon trial of murder, defendant applied for a change of venue upon the ground of prejudice against him which precluded a fair and impartial trial, and the means of knowledge of the supporting affiants was controverted, the question cannot be considered on appeal in the absence of a bill of exceptions; besides, the document mentioned to preserve the evidence cannot be treated as a statement of fact, as it is not in the form required by statute, but in questions and answer form. Following Furgeson v. State, 83 Texas Crim. Rep., 373, and other cases.

2.—Same—Bill of Exceptions—Practice in Trial Court—Rule Stated.

A question and answer record does not comply with the statute prescribing the requisites of a bill of exceptions, and although no form is required, the objection to the ruling of the court must be stated with such circumstances as may be necessary to explain the evidence. Following Plummer v. State, 86 Texas Crim. Rep., 493.

3.—Change of Venue—Burden of Proof—Discretion of Error.

○ The burden of proof, in a motion for the change of venue, is upon the defendant to support by evidence the averments of his motion, and the trial judge, passing upon the application and controverting affidavit, has such discretion as this court will not overturn on appeal unless it is clearly made to appear that the discretion has been abused. Following Lacy v. State, 30 Texas Crim. App., 119, Distinguishing Cox v. State, 90 Texas Crim. Rep., 106.

**4.—Same—Case Stated—Insufficiency of the Evidence—Change of Venue.**

Where the defendant's witnesses showed no such scope of information as rendered their opinions conclusive, but on the contrary on cross-examination disclosed that their knowledge was limited and their means of observation circumscribed, etc., and the State's testimony disclosed a knowledge of conditions throughout the county, and which showed that a fair trial could be obtained, there was no error in overruling a motion for change of venue.

**5.—Same—Newspapers—Prejudice—Insufficiency of Evidence to Support Change of Venue.**

Where the alleged prejudice upon which the defendant relied is traceable to newspaper publications, and those set out in the document referred to appeared to be such only as might come within the scope of the proper function of newspapers, the same were not adequate to support the inference of prejudice necessary to secure a change of venue. Following Cox v. State, 90 Texas Crim. Rep., 106.

**6.—Evidence—Confession—Requested Charge.**

Where the confession introduced in evidence was formal in all respects and upon its face in full compliance with the statutes, and there was testimony showing that it was voluntary and not induced upon promise or matter of a persuasive nature, the testimony of the defendant that it was "crooked," etc., is not sufficient to overthrow it, under the facts in the instant case, and there was no error in refusing a requested charge thereon to exclude it if it was not voluntary. Following Canada v. State, 29 Texas Crim. App., 537, and other cases.

**7.—Same—Insanity—Charge of Court—Words and Phrases—Form of Charge.**

Where, upon trial of murder, the defendant interposed the plea of insanity from the combined effect of intoxicants and drugs, and the court submitted a proper charge thereon, the complaint of defendant that the use of the words "destroy" and "dethrone" placed a greater burden on defendant than the law required with reference to the condition of defendant's mind, this did not vitiate the charge, and although same was not in the usual approved form, there was no reversible error. Following Cannon v. State, 41 Texas Crim. Rep., 490, and other cases.

**8.—Same—Confession—Practice in Trial Court—Whole of Confession.**

Where the State introduced only a part of defendant's confession in evidence and defendant complained of the failure to introduce the whole, but the bill of exceptions showed, as qualified by the court, that no objection was made to the part introduced, and no motion to exclude it, and defendant was advised of his privilege to introduce the omitted part, there was no reversible error, notwithstanding the so-called rule that it is the duty of the prosecution to introduce all of the confession.

**9.—Same—Special Venire—Return of Writ—Women Jurors.**

The failure of the sheriff, in making his return on the special venire writ to state with sufficient particularity his reasons for the failure to serve the absent jurors, is not a ground for quashing the venire writ. Folowing Jones v. State, 85 Texas Crim. Rep., 543, and other cases, and where the amended return stated in sufficient detail the diligence exercised by the officer, and in some instances gave the reason for failure to serve the veniremen because "she was a woman," there was no reversible error.

**10.—Same—Evidence—Declarations of Deceased—Hearsay—Exception to Rule.**

Where the evidence showed that arrangements had been previously made by defendant and his companions with the deceased to call at a certain ad-

dress, there was no error in admitting evidence that the deceased, as he was starting to go to the address, told his father where he was going, and that his purpose in going was to pick up a party with his automobile, as other testimony showed the same fact, and besides this testimony came within the exception to the rule excluding hearsay under which the testimony of the design of one deceased is received. Following Porter v. State, 86 Texas Crim. Rep., 43, and other cases.

### 11.—Same—Sufficiency of the Evidence.

Where, upon trial of murder, inflicting the death penalty, the evidence sustained the conviction, there was no reversible error.

### 12.—Same—Rehearing—Confession—Charge of Court—Confession Freely Made.

Where, upon motion for rehearing, the appellant again insisted that the trial court should have submitted to the jury the question of the voluntary character of appellant's confession, but the record showed that the appellant took the witness stand on his trial and affirmed under oath the truth of the matter contained in his confession, the question of whether such confession was freely and voluntarily admitted is no longer material, Besides, in the absence of some testimony affirmatively showing that the confession in evidence had been wrongfully obtained there was no reversible error.

Appeal from the Criminal District Court of Harris. Tried below before the Honorable C. W. Robinson.

Appeal from a conviction of murder; penalty, death.

The opinion states the case.

*Mathis, Teague & Mathis,* and *Stevens & Stevens,* and *George E. Gordon,* for appellant. On question of submitting charge on the question of voluntary confession: Knight v. State, 116 S. W. Rep., 60; Sharp v. State 197 id., 207; Robertson v. State, 195 id., 602, and cases cited in opinion.

*R. G. Storey,* Assistant Attorney General, and *E. T. Branch,* District Attorney, for the State. On question of charge and confession: Pinchard v. State, 62 Texas Crim. Rep., 605; Burton v. State, 148 S. W. Rep., 805; Cloud v. State, 153 id., 892.

On question of insanity: Foster v. State, 51 Texas Crim. Rep., 77, and cases cited in opinion.

MORROW, PRESIDING JUDGE.—Appellant is condemned to suffer death for the offense of murder. That appellant was an actor in the homicide was proved.

Insanity resulting from the combined effect of intoxicants and drugs was interposed as a defense. The facts upon which the insanity was predicated and the existence of the mental derangement were controverted, and the conclusion of the jury against the appellant upon that issue is supported by the evidence.

Appellant applied for a change of venue upon the ground of prejudice against him which precluded a fair and impartial trial. The means of knowledge of the supporting affiants was controverted.

We fail to find the bill of exceptions reserved to the action of the trial judge in overruling it. This is made necessary by statute. Code of Crim. Proc., Art. 634; Cox v. State, 8 Texas Crim. App. 254; Harbolt v. State, 39 Texas Crim. Rep. 129; Vernon's Texas Crim. Statutes, Vol. 2, p. 342 and cases cited. We find in the record a document which appears to have been designed to preserve the evidence heard upon the application for a change of venue. This document does not purport to be a bill of exceptions, nor is it agreed to as a statement of facts. It is a reproduction in question and answer form of the testimony of various witnesses. We do not regard it as being in a condition to authorize a review of the action of the court for the reason, as stated above, that there is no bill of exceptions upon the subject of change of venue. Even if in the absence of a bill of exceptions to overruling the motion the facts adduced could be considered, the document mentioned cannot be treated as a statement of facts pertaining to the motion for the reason that it does not purport to be one, and for the further reason that it is not prepared in the manner required by the statute. This court has uniformly declared that the stenographer's notes reported in question and answer form do not comply with the statute concerning a statement of facts. The statute requires that there be made up from the question and answer record or from other data "a statement of facts in succinct manner without unnecessary repetitions." A reproduction of the questions and answers as given by the witnesses is obviously a non-compliance with this statutory requirement and has frequently been so declared. Ferguson v. State, 83 Texas Crim. Rep. 273 and cases therein cited; Mooney v. State, 73 Texas Crim. Rep. 122; Felder v. State, 59 Texas Crim. Rep. 144; Hargrave v. State, 53 Texas Crim. Rep. 147; Fox v. State, 53 Texas Crim. Rep. 150. A question and answer record does not comply with the statute prescribing the requisites of a bill of exceptions which declares that "no form shall be required, but that the objection to the ruling shall be stated with such circumstances or so much of the evidence as may be necessary to explain it, and no more, and the whole as briefly as possible." Revised Statutes, Art. 2059; Plummer v. State, 86 Texas Crim. Rep. 493. We have examined the document mentioned, and even if the matter was presented so that we might consider it, it would not authorize a reversal because of the refusal to change the venue.

The burden was upon the appellant to support by evidence the averments of his motion. Lacy v. State, 30 Texas Crim. App. 119; Davis v. State, 19 Texas Crim. App. 201. It was the duty of the trial judge to try the issue made by the application and controverting affidavits and "to grant or refuse the application as the law and the facts should warrant." Code of Crim. Proc., Art. 632. The exercise of judicial discretion thus conferred upon the trial court is not to be overturned on appeal unless it is clearly made to appear that the discretion has been abused. Lacy v. State, 30 Texas Crim. App. 119; Vernon's Texas Crim. Statutes, Vol. 2, p. 342 and cases

listed. The case of Cox v. State, 90 Texas Crim. Rep. 106; is not a precedent supporting appellant's view in the instant case. In that case, the state did not, by pleading or evidence, controvert the application, and appellant, by numerous witnesses, supported his averments without contradiction. The conduct of the publishers of news-papers and the matter circulated by them was of a character to mold sentiment against Cox and against his case, and was supplemented by the proof of other facts which, uncontroverted, clearly established the necessity for a change of venue. In the instant case the application was controverted. There were but five witnesses used by the appellant and one by the state. The appellant's witnesses showed no such scope of information as rendered their opinions conclusive, but, on the contrary, their cross-examination disclosed that their knowledge was limited, their opportunity for observation circumscribed, and that they made no claim of knowing the state of mind existing among the great population of Harris County outside of the city of Houston. The sheriff, on the contrary, who testified for the State, disclosed a knowledge of conditions throughout the county showing that there were practically 100,000 people who did not live within the city of Houston, and to our mind, gave evidence so cogently supporting the ruling of the trial court that this court could not overturn it without usurpation of power. We gather that the evidence of prejudice upon which the appellant relies is traceable to the alleged consequences of newspaper publications. Those not out in the document to which we have referred appear to be such only as might come within the scope of the proper functions of a newspaper, in informing the public of current events. Such publications alone have not, within our knowledge, been held adequate to support the inference of prejudice necessary to secure a change of venue. Cox v. State, 90 Texas Crim. Rep. 106, supra; Ruling Case Law, Vol. 27, p. 618, sec. 36. Our statute upon the selection of individual jurors recognizes that even opinions formed from reading newspaper accounts may not disqualify the juror from sitting in a particular case. Code of Crim. Proc., Art. 692, subdivision 13; Grisson v. State, 4 Texas Crim. App. 374; Rothschilds v. State, 7 Texas Crim. App. 519; McKinney v. State, 31 Texas Crim. Rep. 583; Ashton v. State, 31 Texas Crim. Rep. 479; Groszehmingen v. State, 57 Texas Crim. Rep. 241; Maxey v. State, 66 Texas Crim. Rep. 234; 145 S. W. Rep. 945; Myers v. State, 71 Texas Crim. Rep. 594; Myers v. State, 77 Texas Crim. Rep. 239; 177 S. W. Rep. 1167. It is not to be expected that the men of intelligence from whom our juries are drawn and whose judgment is potent in form-ing public opinion will not inform themselves of the events of the day as they are reflected in the press, nor that they will generally form from such reports an opinion so fixed as to render them incapable of forming an impartial judgment upon hearing the evidence revealed by the witnesses, under oath, in a given case.

The deceased, Mortie Conroy, operated a service car in the city of Houston. On the evening of February 3rd, about seven o'clock, with Flora Moore, Walter Ussery and appellant in his car, the deceased started to Goose Creek. Before starting, the appellant stated in the presence of Flora Moore and Ussery that it was his intention to kill the deceased and take his car and go through Louisiana into Arkansas. While yet in Harris County and while he was driving the car, the deceased was killed, the appellant taking part. After the deceased was killed, he was left by the roadside, appellant and his companions taking the car and proceeding to Louisiana, where the car was abandoned. The facts we have related, together with other details of the homicide, come from the accomplice, Flora Moore. There were circumstances to show that arrangement was made for the trip by Ussery. The body of the deceased was found about three miles from Goose Creek, a place coinciding with the testimony of the accomplice. Five wounds, inflicted by a pistol, were upon the body. One bullet was found in the clothes. Each wound was fatal. All shots entered from the front; two on the right and three on the left side in the vicinity of the nipple.

Appellant's testimony and written confession support, in the main, the testimony of the accomplice.

A request was made that the court instruct the jury that they must believe, beyond a reasonable doubt, "that there was no promise of reward in any way or the hope thereof, expressed or such as would be reasonably implied, or any inducement, held out to the defendant that persuaded him against his will to make the confession; nor that there were no threats by word or act which contributed to the confession; but that the same was made voluntarily and without any kind of influence." The testimony of those present at the time the confession was made, except the appellant, raised, so far as we are able to discern, no issue or suggestion adverse to the voluntary character of the confession.

The confession introduced in evidence was formal in all respects and upon its face in full compliance with the statute. The stenographer who took it testified to facts showing that it was voluntary; that it was induced upon no promise, or matter of a persuasive nature. Appellant testified that "it was not voluntarily made; that he was 'crooked' to make the statement; that he had been placed in jail upon his arrival in Houston from Salem, Illinois, and within an hour and a half or two hours, Leach, the stenographer, came for the confession; that at the time appellant had pulled off his clothes and laid down to rest; that he had not slept on the trip; that there was a newspaper reporter and a deputy sheriff present and that he told Leach that he did not want to tell anything but that Leach insisted; that he was told that the rest of them had made a confession and laid everything on him; that he had not sent for anybody or asked for anybody."

Appellant insists that though the charge requested was not accurate, it suggested the omission of an essential phase of the charge, and that the failure to amend the charge was error. In our opinion, the evidence quoted did not render it incumbent upon the court to submit to the jury the question whether the confession was voluntary. Carr v. State, 24 Texas Crim. App. 562; Cannada v. State, 29 Texas Crim. App. 537; Thomas v. State, 35 Texas Crim. Rep. 178; Anderson v. State, 54 S. W. Rep. 581; Brown v. State, 45 Texas Crim. Rep. 139; 18 L. R. A. (N. S.) p. 820, note; 36 L. R. A. (N. S.) 210, note; Zwicker v. State, 27 Texas Crim. App. 593; Crimsinger v. State, 44 Texas Crim. Rep. 19; Greer v. State, 45 S. W. Rep. 12; Lopez v. State, 37 Texas Crim. Rep. 649. The mere conclusion that the witness had been "crooked" without giving any fact upon which it could be based, we think, would not present any evidence requiring the court to have the jury determine whether the confession was involuntary. The statement that "Leach insisted" does not suggest that he acted in any improper way; that he made any threat or promise or did anything that would have coerced the appellant or caused him to make a false confession. The same is true with reference to the alleged statement that the others had confessed. Nothing in the record indicates that this alleged information was not true.

On the issue of insanity, the court gave, in part, the following instruction:

"Should you believe from the the evidence in this case that at the time of the killing of Mortie Conroy, by the defendant Carl Parker, if you find that he did kill him, that the defendant was temporarily insane from the use of whiskey mixed with some character of drugs, that for the time destroyed his mind, and that from said use of said whiskey mixed with some character of drug his mind was in that condition at the time of the killing that he could not realize the right from the wrong of the particular transaction then the law, while in such condition (if you find he was), he would not be criminally responsible for the acts committed while in such condition, and if you find in this case, from the evidence, that the mind of the defendant, Carl Parker, was dethroned and that he could not distinguish at the time the right from the wrong of the act he committed, you will acquit the defendant."

Exception was reserved to this paragraph upon the view that in the use of the word *destroy* and the word *dethroned* a greater burden was placed upon the appellant than the law imposed. Our statute provides that "no act done in a state of insanity can be punished as an offense." Penal Code, Art. 39. The possession of one's faculties in full vigor or unimpaired by any disease is not required as a condition precedent to responsibility for crime. To discharge himself on the ground of insanity for the offense of murder, one must prove that his intellect was so disordered that he did not know the nature and quality of the act he was doing and

did not know it was an act he ought not to do. Carter v. State, 12 Texas Crim. App. 500; Webb v. State, 5 Texas Crim. App. 596; and other cases in Vernon's Texas Crim. Statutes, Vol. 1, p. 18.

The law requires that in cases where the issue arises those principles be made known to the jury in appropriate terms. The law does not, however, designate any particular formula that shall be used. The trial judge is free to make choice of the words at his own discretion, conditioned only that they be adequate to protect the rights of the accused under the law. It is true, however, that in Willson's Criminal Forms, there has been suggested language suitable for the purpose, and these prepared charges have received the sanction of this court. Clark v. State, 8 Texas Crim. App. 350; King v. State, 9 Texas Crim. App. 515; Webb v. State, 5 Texas Crim. App. 596. Under these conditions, it would seem wise to follow the approved forms, but as stated above, it is not essential. We do not think that we would be warranted in reversing the case because the court, in his charge on insanity, used the word complained of, it being apparent from the verbiage of the charge that it conveyed to the jury the knowledge that it was only required that appellant prove that at the time of the homicide the condition of his mind from the causes stated was such that he did not know the act committed was wrong. The terms used are not stronger than some that are found in the approved charges. For example, it is said: "If his mind at the time of such killing was in such diseased and unsound condition that for the time being his reason, conscience, and judgment was *overwhelmed* to such an extent that he did not know such act was wrong and criminal, etc." Cannon v. State, 41 Texas Crim. Rep. 490; See also Leache v. State, 22 Texas Crim. Rep. 279. In the forms prepared and often approved, there are found expressions in no substantial degree different from the language complained of. In Willson's Crim. Forms (Old Edition, p. 716), we find:

"* * * In such a case, reason would be at the time dethroned;" also: "* * * overriding the reason and judgment, and *obliterating* the sense of right and wrong;" and this: "* * * where reason ceases to have dominion over a mind;" and this: * * * if the mind was in a diseased and unsound state, to such a high degree that for the time being it *overwhelmed* the reason, conscience and judgment." Tubb v. State, 55 Texas Crim. Rep. 606; Sartin v. State, 51 Texas Crim. Rep. 571.

The written confession was long and contained many details of the movements of the appellant and his companions before and after the homicide. Only a part of it was introduced by the State. The bill of exceptions complains of the failure to introduce the whole. The qualification of this bill reveals that no objection was made to the part introduced; no motion to exclude it because of the omission of the remainder. It was further qualified with the information that the appellant was advised of his privilege to intro-

duce the omitted part. In the text-books and decisions, there are found expressions to the effect that it is the duty of the prosecuting officers to introduce all of the confession. Underhill on Crim. Evidence, 2nd Ed., Sec. 147a, p. 282; Wharton on Crim. Evidence, Vol. 2, Sec. 622j, p. 1299; Cyc. of Law & Proc., Vol. 12, p. 462; Jones v. State, 13 Texas Reports, 168; Powell v. State, 37 Texas Reports, 348; Davis v. State, 85 Texas Crim. Rep., 15, 209 S. W. Rep. 750. The accuracy of the text is not made clear by the decisions cited in support of it, but whether a correct or questionable rule is not a matter of consequence in the instant case for the reason that the bill preserving the question indicates that no steps were taken to compel the State to introduce the whole or to exclude that which was in evidence, nor to put in evidence for the appellant the omitted part. He testified in his own behalf. The omitted portion of the confession was available to him, and we are unable to discern in what sense he was injured by the failure of the State to introduce all of the confession. See Bailey v. State, 65 Texas Crim. Rep. 1; 144 S. W. Rep. 1002.

The failure of the sheriff in making his return on the special venire writ to state with sufficient particularity his reasons for the failure to serve the absent jurors is not a ground for quashing the venire writ. Murray v. State, 21 Texas Crim. App. 466; Whittington v. State, 86 Texas Crim. Rep. 3; Jones v. State, 85 Texas Crim. Rep. 543. The amended return stated in sufficient detail the diligence, and the truth of the statements in the return is not controverted. In some instances there was given as reason for failure to serve the veniremen the statement that "she was a woman." If in fact she was a woman, no injury resulted from the failure to serve her. If the appellant believed the declaration was untrue, he had the alternative to contest the truth of the sheriff's return upon that question or to demand process for the unserved veniremen, neither of which, in the instant case, was done.

The appellant and his companions got into the automobile of the deceased at a certain address in the city of Houston. Arrangements had been previously made with the deceased to call at the address. Evidence was introduced that it was the stopping place of the appellant and his companions. As he was starting to go to the address, the deceased told his father where he was going, and that his purpose in going was to pick up a party. This evidence, it is claimed, was obnoxious to the hearsay rule. We think there is no harmful error in receiving the testimony. The fact that the deceased called for the appellant and his companions at the address mentioned was in evidence from other sources. It was admitted by the appellant in his testimony. The evidence was, moreover, apparently within the exception to the rule excluding hearsay, under which the testimony of the design of one deceased is received. See Wigmore on Evidence, Vol. 1, Sec. 102; Porter v. State, 86 Texas Crim. Rep. 43; Clanton v. Howard, 205 Mass. 128.

Appellant's sole defense, raised upon his own testimony, was that before undertaking the journey, he had been drinking whisky; that he drank whisky upon the trip upon which the deceased was killed and was drugged by his companion, Flora Moore; that in consequence thereof he was rendered insane for the time being. According to his testimony, he sat with the deceased upon the front seat; that Flora Moore told him the deceased had a gun; handed him a pistol and told him to shoot the deceased; that he was "crazy drunk" and did not know whether he did the shooting or not; that he had since been told by Flora Moore that she had "doped" him. The woman's testimony conflicted pointedly with that of the appellant as to his condition, and her conduct towards him, and other circumstances were introduced showing the demeanor of the appellant along the route after the homicide, inconsistent with his story of want of mental capacity. Under the statement of the girl, the homicide was a pre-arranged and heartless murder, cruelly executed for the purpose of gain.

The judgment is affirmed.

*Affirmed.*

### ON REHEARING.

### January 18, 1922.

LATTIMORE, JUDGE.—But one contention is made in appellant's motion, viz: that the trial court should have submitted to the jury the question of the voluntary character of the appellant's confession, and that we were wrong in not holding erroneous the failure so to do. Relative to this matter the facts show that the State introduced against appellant part of a confession made by him to a Mr. Leach. No objection was made thereto at the time, nor was any motion thereafter made to strike same from the record. The whole of said confession is attached to bill of exceptions No. 7, qualifying which bill the court sets forth, in substance, that appellant was told that if he desired to introduce all said confession not placed in evidence by the State, he could do so. From said confession it appears that appellant stated therein that he shot deceased, at the time of said alleged homicide, but was so drunk at the time that he did not know what he was doing. We observe that no contention was made on this trial that appellant did not shoot and kill deceased, but reliance was had on the fact that at the time he was in such condition from the recent use of liquor, which he claimed was "doped" or drugged, as not to know the nature and character of his act. Appellant took the witness stand in his own behalf on the instant trial and testified that when he shot, Flora Moore ( a woman in the car with him at the time) told him to shoot deceased. On cross-examination he said: "I thought

he was going to pull a pistol on me, because the girl punched me
and told me he was. * * * I believe the car was running slow when
I shot the boy, but I really don't know. * *    I recollect something
of the pumping station, but I don't know anything about it, I
was too drunk to know. * * *    I told Charley Leach the truth, but
I did not tell him all the truth, but I am telling the truth now." In
this condition of the record we are asked to hold that not only was
error committed in the failure of the court to tell the jury that if
the confession made to Mr. Leach was not freely and voluntarily
made, they should not consider same for any purpose, but also that
such error was prejudicial to the appellant. We cannot so conclude.
It is needless to discuss confessions. They are held to be state-
ments of the accused in criminal cases hostile to his own interests,
but which must be shown to have been made in accordance with
certain precautionary rules, before same will be held admissible.
These rules are deemed wise and needful in order to prevent the use
against the accused of his statements made under duress, fear, in-
timidation, coercion or hope of favor, etc. Said rules are based on
the general hypothesis that the truth of statements made under the
circumstances referred to, is too often questionable. The only object
sought in the entire matter is truth, and, in an effort to arrive at
same, it is statutory in this State, and seems almost universally held,
that when in connection with a confession, even though made under
circumstances otherwise rendering same inadmissible, facts are stated
which conduce to establish guilt, such as those leading to the dis-
covery of stolen property, or the weapon or means by which the
crime was committed,—then the essential element of truth in the
confession is so far established as to make such confession admissible.
Believing the point under discussion to be analogous, and in con-
sonance with this rule we believe that when the accused takes the
witness stand on his trial and affirms under oath the truth of the
matter contained in his confession, the question of whether such
confession was freely and voluntarily made is no longer material. As
said by the Supreme Court of Nevada, in State v. Johnny, 87 Pac.
3, wherein the court was discussing the identical question here pre-
sented, the accused having testified as a witness to substantially the
same facts as contained in his confession objected to because obtained
through fear, inducements or threats, the court said:

"All that can be made of the defendant's testimony is that he
was scared when he made his confession to Harbin; but he iterates
on the stand that what he told that night was the truth. The only
object in excluding testimony given under threats, duress or upon
promise of reward, is that such testimony might not be the truth. A
defendant cannot be prejudiced by the admission of a confession which
he voluntarily acknowledges under oath, is the truth." To the same
effect is the statement by Mr. Wigmore in his work on Evidence,
Vol. 1, Sec. 856, from which we quote.

"It has already been noticed (ante, Sec. 822) that the fundamental theory upon which confessions become inadmissible is that when made under certain conditions they are untrustworthy as testimonial utterances. A very slight probability of untruth, to be sure, is sufficient to exclude (a probability much less than that which supports other testimonial exclusions), and the tests worked out are often more or less artificial; but this principle underlies the whole body of rules. If now a circumstance appears which indicates that the law's fear of untrustworthiness is unfounded, and counteracts the significance of the improper inducement by demonstrating that after all it exercised no sinister influence, the confession should be adopted. This is the theory of Confirmation by Subsequent Facts, which has been in vogue ever since there has been any doctrine about excluding confessions."

Without discussing the question of the voluntary character of the confession in issue, we might correctly overrule appellant's contention for the reasons just stated. Closely akin to the principle announced is the well established rule that when evidence is introduced or permitted without objection, this would render unavailing on appeal an objection raised to similar evidence when offered.

We would furthermore not be inclined to hold, upon an analysis of the facts herein as applicable to the principle under discussion that, in the absence of some testimony affirmatively showing that the confession in evidence had been wrongfully obtained, it was material error to refuse to submit the issue of the voluntary character of said confession to the jury, the only supporting proof of appellant's contention that it was not freely and voluntarily made, being the statement of the accused that his confession was not voluntary, and that he was "crooked" to make it, when the appellant's narration of the details of what then took place between him and Mr. Leach appears to entirely contradict the conclusions embraced in his statements just noted.

Finding no merit in the motion same will be overruled.

*Overruled.*